(111 So. 753)

## ATLANTIC COAST LINE R. CO. v. RUSSELL. (3 Div. 792.)

(Supreme Court of Alabama. Jan. 20, 1927. Rehearing Denied March 31, 1927.)

1. **Master and servant** ⟐281(11)—Finding that switch engine foreman did not assume risk by mounting cars to prevent side-swipe collision held sustained by evidence (Employer's Liability Act [U. S. Comp. St. §§ 8657–8665]).

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries to switch engine foreman as result of head-on collision, evidence *held* to sustain jury's finding that plaintiff in mounting cars to apply brakes preventing side-swipe collision did not assume risk; conduct not constituting recklessness.

2. **Master and servant** ⟐246(1)—Employee owes general duty to conserve employer's property.

Employee is under general duty to conserve employer's property as well as safety of fellow employees.

3. **Master and servant** ⟐286(34)—Negligence of trainmen held for jury, where foreman of switch engine was injured in head-on collision (Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries by foreman of switch engine hurt in head-on collision, question of negligence of trainmen as proximate cause of injury *held* for jury.

4. **Master and servant** ⟐137(6)—Enginemen switching cars held required to see switch was properly set.

Where in switching cars, engine was in the clear, enginemen were required to see that switch was properly set for lead track.

5. **Master and servant** ⟐144—Custom to move cars in disregard of regulations provided by law constitutes negligence (Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).

Custom of railroad employee to move in disregard of regulations provided by law amounts to no more than habitual negligence and affords no protection in action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

6. **Negligence** ⟐101—Contributory negligence is provable in mitigation of damages under Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), contributory negligence, though not bar, goes in mitigation of damages.

7. **Master and servant** ⟐289(30)—Existence of yard custom not to kick cars on lead track in front of standing train, without warning held for jury (Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries to switch engine foreman, existence of yard custom, when train is due to leave, not to kick cars on lead track in front of standing train without special warning, *held* question for jury, where controverted in evidence.

8. **Master and servant** ⟐240(6)—Switch engine crew and foreman were required in exercise of care to watch switched cars.

All parties engaged in switch engine crew and its foreman were required in exercise of due care to watch switched cars to avoid injuries from collision.

9. **Master and servant** ⟐289(30)—Contributory negligence of switch engine foreman injured in head-on collision held for jury (Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).

Issue of contributory negligence *held* for jury in action under Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries to switch engine foreman thrown from top of car in head-on collision.

10. **Damages** ⟐132(7)—$12,000 to 45 year old switch engine foreman for injuries to arm and knee permanently preventing continuance in similar employment, and for pain and suffering, held not excessive.

$12,000 damages to 45 year old switch engine foreman, earning $200 per month, for injuries permanently impairing use of arm and knee, for pain and suffering, and permanent disability to pursue his work as switch engine foreman or similar employment, *held* not excessive.

11. **Damages** ⟐53—Incidental pain, including abiding sense of disability, should be considered in assessing damages for injuries.

In assessing damages for injuries, pain incident to injury, including abiding sense of disability, should be considered.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action for damages by Bodie C. Russell against the Atlantic Coast Line Railroad Company. From a judgment for plaintiff for $12,000, defendant appeals. Affirmed.

Arrington & Arrington, of Montgomery, for appellant.

The damages recoverable by plaintiff are to be diminished in proportion to the amount of negligence attributable to him. Norfolk, etc., R. Co. v. Earnest, 229 U. S. 114, 33 S. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; S. A. L. v. Tilghman, 237 U. S. 499, 35 S. Ct. 653, 59 L. Ed. 1069. The verdict was greatly excessive, considering the character and extent of plaintiff's injuries.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

Damages for pain and mental suffering are largely discretionary. The trial court and the jury, having seen and observed plaintiff's injuries, are in better position to judge thereof

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

than the appellate court. The judgment should not be disturbed unless it is indicative of prejudice, passion, partiality, or corruption. Whitman's Garage v. Ricks, 211 Ala. 528, 101 So. 53; L. & N. v. Robinson, 213 Ala. 522, 105 So. 875; Sloss Co. v. Jones, 207 Ala. 7, 91 So. 808; Ala. Power Co. v. Fergusen, 205 Ala. 204, 87 So. 796; L. & N. v. Williams, 183 Ala. 138, 62 So. 679, Ann. Cas. 1915D, 483; 17 C. J. 1090; Central of Georgia R. Co. v. White, 175 Ala. 62, 56 So. 574; Montgomery Tr. Co. v. Knabe, 158 Ala. 458, 48 So. 501.

BOULDIN, J. The suit is for personal injuries, under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

The questions presented on appeal arise upon the denial of defendant's motion for a new trial. The grounds of the motion were that the verdict was not supported by the evidence and was excessive.

That the defendant was a common carrier by railroad engaged in interstate commerce, and that the plaintiff was at the time an employee engaged in such commerce, are admitted facts.

The injury resulted from a collision of moving cars with a locomotive in the switchyard of the defendant in the city of Montgomery. The yards contained a lead track with several spur tracks upon which outgoing trains were made up. The plaintiff was foreman of the switch engine. He had made up a train, known as "2d Extra 212," which was standing with engine attached on track No. 5. Plaintiff directed his switch crew to kick three detached cars along the lead track toward track No. 1, passing the switch point of track No. 5. As these cars approached, the train 212 began to move out of track No. 5 toward the lead track. The plaintiff, seeing a collision, commonly called a side-swipe, was imminent, hurriedly threw the switch to turn the moving cars into track No. 5, so as to meet the locomotive head-on, and mounted the cars to apply the brakes and stop or check their movement, and thus prevent a collision or reduce its violence. While applying the brakes, the collision occurred, throwing plaintiff from the top of the car, falling on the pilot of the engine, and resulting in his injury. No other injury ensued.

[1, 2] The evidence warranted a finding by the jury that a side-swipe is more dangerous to life and property than a head-on collision; that a side-swipe was or reasonably appeared to be imminent; that the act of plaintiff in mounting the cars and putting himself in peril was not so manifestly dangerous or useless as to constitute recklessness on the part of a man of ordinary prudence acting in emergency. In view of the general duty to conserve the property of the employer, as well as the safety of the employees, and the rule of the company to like effect, the evidence amply supported a finding by the jury of no assumption of risk by plaintiff in placing himself in a position of peril on the moving cars. Atlantic Coast Line R. Co. v. Jeffcoat, 214 Ala. 317, 107 So. 456.

[3] The question of major importance in the case is that of negligence vel non on the part of the trainmen of 212 as a proximate cause of the injury. A full review of the evidence of the numerous witnesses bearing upon this issue would be inappropriate. A mere summary disclosing the reasons for our holding will suffice.

It appears the engine of second extra 212, somewhat delayed by first extra 212, had moved into track 5, connected with its train of 20 to 25 cars, pulled up and stopped some 10 to 15 feet in the clear of the lead track. Upon signal to apply brakes, the engineer blew one blast of the whistle, the signal that brakes were applied for inspection; after inspection and upon signal from the inspector to the fireman, brakes were released, two blasts of the whistle blew, and the train moved.

[4] Passing over some questions as to the time the train should remain on the switch track, and of proper inspection after release of brakes, we may say the two blasts of the whistle were notice to the switchman that the train was ready to go, that it had the right of way, and that it was the duty of the switch crew to clear the lead track. The inquiry then is: How and under what precautions should the train move? One rule is that while the engine is in the clear the enginemen must see that the switch is properly set for the lead track.

There was evidence, somewhat controverted, that the brakeman sent ahead to line up switches was to pilot the train out, and the train should await a "come on" signal from him; other evidence rather strongly controverted that the trainman or pilot should await a signal from the switch foreman, this plaintiff, before proceeding.

The evidence, fully considered on both sides, clearly supports a finding that the train was started on a signal from the rear, saying in effect, all right here; that no signal came from the front; that the engineer in his place could not see the switch at the point of track 5, nor the brakeman on the lead track ahead, but depended upon the fireman who could see to pass signals; that in fact when the train started from a point 10 to 15 feet from the danger zone, the switch was turned against this train and lined up for passing cars on the lead track; and that the moving cars on the lead track were in plain view of the fireman. Indeed, we gather from the fireman's testimony that he passed the rear signal to the engineer, brakes were released, steam applied and the train moved before the fireman looked ahead, and when he did look he saw the detached cars, and quickly warned the engineer, but just in time

to bring the engine to a stop as the collision occurred. The distance the train moved is at variance, being estimated from 4 to 20 feet.

On this phase of the evidence a finding of negligence on the part of the trainmen, as the proximate cause of the injury, was within the province of the jury. That the brakeman had, while inspection was being made, lined the switch preparatory to the trains coming out, and that it was turned again by the switch crew, does not change the matter. The trainmen were not misled thereby, because they neither looked for the switch nor for signals before starting out.

[5] Any custom to move in disregard of the regulations provided by law amounts to no more than habitual negligence and affords no protection. ·

[6] In actions under the federal Employers' Liability Act, contributory negligence is not a bar, but goes into mitigation of damages. In this case it is to be considered in connection with the question of excessive verdict.

[7-9] There is evidence that it was a custom of the yard, after signal for inspection, and the train is due to leave, not to kick cars on the lead track in front of the standing train without special warning to trainmen. This is controverted in the evidence, and was a jury question. There is other evidence that pending inspection the switchyard remains active until the signal for brakes off, or ready to go, is given; and other evidence that the cars had been cut loose from the engine and were moving down the lead track at the rate of four to six miles per hour when the signal by two blasts was given. In dealing with matter of contributory negligence in this connection, we note that according to much evidence on both sides some one to two minutes are required for the proper release of brakes, after the signal of two blasts, before the train moves. These detached moving cars were, under the evidence, some 250 feet from the point of switch 5, when this signal was given. At four miles per hour they would move 352 feet, and clear the point of switch 5, in one minute. The plaintiff, under this phase of the evidence, in ordering the cars kicked up the track before the whistle blew, might expect them to pass before the train was ready to move. While due care required all parties to be watchful, when we consider that the switch was closed in front of the trainmen, that plaintiff was at hand to give signals when needed, that the moving cars were in plain view, it was a question for the jury, on the whole evidence, whether in thus moving the cars plaintiff was guilty of negligence, which proximately contributed to his injury. The evidence was that plaintiff was near switch 5. He testified that when he saw the train about to move, he called and tried to get the eye and ear of the engineer, but could not,

and thus resorted to the measures above outlined.

[10] The evidence, going to injury and damages, tended to show: That plaintiff was 45 years of age, had been in the employ of the defendant 25 years, was in good health and earning about $200 per month; that he received an incised wound and contusion of the scalp, a severe contusion of the shoulder, a fracture of the right clavicle, and a contusion of the right knee; that he was treated in the hospital 7 days and was returned to work after 42 days, and continued in the same service from June 22, 1925, to September 3d following, losing 4 to 6 days during that period; that he then brought suit, and relations were severed with defendant; that then he worked a few days for another company and gave out, and has since engaged in carpenter's work as he could. Plaintiff testified that after returning to work his knee gave him trouble, would swell up and get stiff while working in rainy weather, that he could not run, could not climb without support, and that his knee gave out and he fell several times; that he has lost sensation in the two smaller fingers of his right hand, and the injured right arm was, at the time of the trial, 8 months after the injury, smaller than his left.

Dr. Centerfit and Dr. Montgomery corroborated plaintiff as to the extent of the injury, gave the opinion that he has an injury of the semilunar cartilage, permanent in character, causing the knee to give way at times, resulting in a fall. Dr. Montgomery advised against an operation as of doubtful results. The injury to the arm and fingers is attributed by the physicians to an injured nerve, or pressure thereon. Dr. Montgomery expressed the opinion that plaintiff will never regain the full use of his arm. Dr. Baker differs from Drs. Montgomery and Centerfit as to the nature and extent of the injuries.

[11] The injured parts were exposed for inspection of the jury. The evidence on the whole supports a finding by the jury that plaintiff is permanently disabled to pursue the employment to which his training since manhood has been devoted, or other similar employment. The extent to which he is disabled to engage in other employment, or his earnings therefrom, are conjectural. The pain incident to his injury, including the abiding sense of disability, is to be taken into the account.

Without the opportunity to see and hear the witnesses and inspect the injured parts, which were had by the jury and trial judge, we are not convinced the verdict as reduced by the trial judge should be disturbed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur. ·