In the Matter of the Claim of GRACE BIRCH, Respondent, Appellant, against HELEN GAMWELL BUDD, Employer, and STATE INSURANCE FUND, Insurance Carrier, Appellant, Respondent.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, January 11, 1939.

*Patrick S. Mason* [*George J. Hayes* of counsel; *Bernard Botein* with him on the brief], for the State Insurance Fund.

*Arthur B. Curran,* for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Roy Wiedersum, Assistant Attorney-General,* of counsel], for the State Industrial Board.

BLISS, J.   There are two principal questions in this case.   The first is whether the employee's injuries arose out of and in the course of his employment and the second relates to the correctness

of the rate of death benefits awarded. The deceased employee received fatal burns while attempting to extinguish a fire in the employer's apartment house. He was found in the boiler room of the apartment house and his burning pajamas lay in the hall outside of his own apartment. The fire apparently originated in a radio or the radio wiring in deceased's own apartment. Deceased was the janitor of the building. He cared for the property and the fires and was on duty day and night, except for that portion of the day when he was employed outside as a barber. He and his wife, who assisted about the premises with the janitorial tasks, had returned home late, looked after the boiler and retired. About four A. M. the wife was aroused, smelled smoke and discovered the living room in their apartment on fire. The radio, window curtains and other contents were ablaze. Her husband was missing and she later found him in the boiler room. He told her that he had awakened, found the radio burning, tried to pull the wires from the radio and the curtains and his pajamas then caught on fire.

The appellant insurance carrier relies principally upon the case of *Pisko* v. *Mintz* (262 N. Y. 176) to sustain its claim that the accident did not arise out of and in the course of the employment. In that case the janitor Pisko was suffocated by a fire which originated in a bed in the apartment occupied by him. The Court of Appeals held that the danger was in no way connected with the particular apartment or place that Pisko was obliged to occupy under the terms of his employment; that the only reasonable inference to be drawn was that Pisko, the only person present, through some act of carelessness or negligence of his own not connected with or arising out of his employment, set fire to his bedding, an act for which the employer would not be liable under the Workmen's Compensation Law. Judge CRANE, writing for the court, said: " There is a clear distinction between these facts and the case where an employee while asleep in his room is burned up because of a fire originating outside of his apartment which renders the place he is compelled to occupy unsafe and dangerous. The risk is at once connected with the place of his employment. When the place is rendered dangerous by some act or condition due to his occupancy and not due to the place itself, the injury or death does not come within the intent or purpose of the law."

Here we have a different situation. While it is true that the fire apparently originated in the apartment occupied by the decedent, there the analogy ceases. It was not caused by any act of the decedent. The last person to operate the radio was deceased's son who occupied the apartment with him. The build-

ing itself was in danger and actually damaged by the fire. In attempting to extinguish the fire decedent was performing his duties as a janitor and promoting his employer's interests in the highest sense. His efforts were not confined to his own apartment alone. The fire was endangering his employer's property which he was bound to and tried to protect. He died in line of duty. That the fire started inside instead of outside of his apartment did not render his service less beneficial to his employer or make it an act personal unto himself alone. We cannot say on this record that the fire was due to his occupancy of the apartment alone. The cause of the fire does not appear. While the radio was in decedent's apartment the current to operate it was furnished by the employer. In the absence of substantial evidence to the contrary we must presume that this claim comes within the provisions of the act. (Workmen's Comp. Law, § 21; *Heitz* v. *Ruppert*, 218 N. Y. 148.)

This accident also happened in the course of the employment. Decedent was on duty at all hours of the day and night, except when absent at his barbering. The same night at one-thirty A. M. he had looked after the boiler. He lived on the premises as a part of his employment.

The contention of the appellant carrier that the decedent was not an employee merits no consideration save to call attention to the fact that the evidence shows that he performed these janitorial services with the employer's knowledge and consent, had been required by the employer to obtain a stationary engineer's license in order to fill the position and also held a janitor's license. The employer's agent testified that decedent was a coemployee and that he had to be at the apartment house.

The State Industrial Board has found that the deceased employee worked at the employment in which he was injured for substantially the entire year prior to date of the injury and that his average weekly wage during such period in the employment in which he was injured was the sum of nine dollars and twenty-three cents. The award was based on this average weekly wage. The appealing claimant urges that this was erroneous because, as she claims, the decedent worked only in his spare time for the employer and was not substantially employed during the whole year, and, therefore, his actual earnings in his other employment of barbering should be considered.

The decedent's employment as a janitor was not seasonal but continuous the year around. It is true that during part of each week day he also worked at the employment of barbering. However, his earnings in the employment other than the one in which

he was injured may not be considered.   Section 14 of the Workmen's Compensation Law states that the average weekly wage of the injured employee at the time of the injury shall be taken as the basis on which to compute compensation or death benefits and that these average weekly wages shall be determined according to certain rules there laid down.   The first rule is contained in subdivision 1 of that section and is to the effect that if the injured employee shall have worked in the employment in which he was working at the time of the accident during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned *in such employment*.   If the injured employee does not come within subdivision 1, then under subdivision 2 his average annual earnings are said to consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year *in the same or in a similar employment* in the same or neighboring place shall have earned *in such employment* during the days when so employed.   According to subdivision 3, if either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, such annual average earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment, or other employment as defined in the Workmen's Compensation Law, in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee *in the employment in which he was working at the time of the accident,* provided, however, his average annual earnings shall consist of not less than two hundred times the average daily wage or salary which he shall have earned *in such employment* during the days when so employed. (Workmen's Comp. Law, § 14, subds. 1, 2 and 3.)

The entire scheme of the statute limits the employee's average weekly wages, and the consequent compensation or death benefit rate, to earnings in the employment in which the employee is working at the time of the accident.   It is only under subdivision 3 that the State Industrial Board may consider earnings in any employment other than the specific one in which the workman is injured, and then it may consider them only for the purpose of finding a sum which shall reasonably represent the annual earning capacity of the injured employee in the specific employment in which he is working when injured.   Thus there are two reasons why the contention of the claimant appellant cannot be sustained.   In the

first place, the Board has found that this decedent had worked substantially the whole of the year immediately preceding his injury as a janitor and for this same employer, thus bringing him squarely within subdivision 1 of section 14. That was for the Board to determine upon all the facts presented. (*Adams* v. *Boorum & Pease Co.*, 179 App. Div. 412.) The second reason is that if we were to add to his earnings as a janitor those as a barber, the total would not reasonably represent Birch's annual earning capacity as a janitor.

This accords with the previous decisions of our court and the Court of Appeals. *Phillips* v. *New York Trap Rock Co.* (245 App. Div. 353) was a case in which the claimant was engaged in two hazardous employments and we held that only his earnings in the employment in which he was working when injured might be considered. *Sorenson* v. *Queensboro Corp.* (249 App. Div. 359) is another case in point and is the one on which the State Industrial Board relied in making its determination here. There the State Industrial Board in applying subdivision 3 considered the earnings of another employee in the same employment which were substantially in excess of the actual earnings of the injured woman. Our court held that such a standard was fictitious and that the desired result should accord with reality.

There have been two cases in the Court of Appeals in which the employee's earnings from more than one employer were considered in determining his average weekly wages. They are *Moochler* v. *Herrick & Son* (272 N. Y. 545) and *McDowell* v. *Flatbush Congregational Church* (277 id. 536). However, the nature of the employment was in each instance the same. In the *Moochler* case the deceased was employed as a night watchman by the appellant Herrick & Son and was killed while in its service. He was also employed as a night watchman by several other employers and his total earnings were made the basis of the award. In the *McDowell* case the claimant was injured while engaged as an assistant housekeeper by a church and also worked as a dietitian at a public high school, a similar kind of employment that came within a liberal construction of the statute.

The appealing claimant would have us hold that as matter of law Birch did not come within subdivision 1 of section 14, claiming that he worked only in his spare time for the employer and that, therefore, subdivision 3 should have been applied instead of subdivision 1. Decedent was not a part time employee. He had been employed by the employer Budd for about three years prior to the accident. He had worked as a janitor regularly the year around for the employer. Likewise during the same

period he had worked regularly as a barber. The claimant herself testified that he had been employed for the last year as a janitor immediately preceding the date of injury. She went into great detail as to the work which he did about the apartment house. Just which of his dual occupations took up the greater portion of his time is not apparent, but the testimony is that he had to be at the apartment practically all of his time. In view of this proof we cannot say that the finding of the State Industrial Board as to his having been employed by the employer Budd during substantially the entire year prior to the accident is wholly lacking of support.

The award should be affirmed, without costs.

HILL, P. J., RHODES, McNAMEE and CRAPSER, JJ., concur.

Award affirmed, without costs.