SCHILLING, et al. *v.* MISSISSIPPI STATE FORESTRY
COMM., et al.

No. 39964          February 20, 1956          85 So. 2d 562

*Hall & Callender, Maurice Dantin,* Columbia; *Breed O. Mounger,* Tylertown, for appellants.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellees.

ETHRIDGE, J.

This workman's compensation claim is made by the widow and dependent son of the deceased employee, Herbert L. Schilling. The employer was the Mississippi State Forestry Commission, which along with its insurance carrier is the appellee and cross-appellant. The attorney-referee held that Schilling's death arose out of and in the course of his employment, that his average weekly wages were $32.38, and awarded compensation. The workman's Compensation Commission affirmed this order, and the Circuit Court of Pike County affirmed it in part, holding that the injury arose out of and in the course of employment. However, since Schilling worked only about six months in the year, in seasonal employment, the circuit court reversed in part the order of the Commission, and held that the employee's average weekly wages were $16.19, or one-half of the amount found by the Commission. From this judgment the claimants have prosecuted a direct appeal as to the determination of average weekly wages. The employer and its insurance carrier have filed a cross-appeal on the issue of liability under the Act.

Schilling was 64 years of age. He was employed by the State Forestry Commission as a forest fire spotter at the Rose Hill Fire Tower in Pike County. This tower was about 100 feet in height, and in order for Schilling to get to the top, it was necessary to walk up 135 steps, being 15 flights of 9 steps each, with a rise on each step of 8 3/4 inches. The job consisted of surveying the surrounding forests, spotting fires, and communicating about them by a two-way radio with fire trucks operated

by the commission in that area. It was a seasonal employment, covering the usually dry period of the year, from October through March or April, for about six months. Schilling had done this work for the commission for such six-month periods during the preceding five years, but at varying salaries. The Forestry Commission again employed him on October 15, 1953, to do this work, and he was so employed on the date of his death on March 15, 1954. His monthly salary was $140.00.

The evidence for claimants reflects that in order for a person to climb the stairs and reach the top of the tower a considerable amount of physical exertion was necessary; that most people had to stop and rest on some of the flights, and a physically normal person was usually out of breath and temporarily fatigued when he reached the top of the tower. On February 11, 1954, Schilling, who had been complaining to his wife and others of pains in his chest and stomach, was examined by Dr. J. J. Pittman, who placed him in the hospital for two days for observation and diagnosis. Dr. Pittman testified that he concluded that Schilling had gall bladder trouble, chronic bronchitis, and chronic heart disease, which he defined as chronic myocarditis. Schilling remained off duty until February 18 when he went back to work, but he continued to complain of pains in the region of his heart and chest.

On the morning of March 14, 1954, he complained to his family of not feeling well, and drank a cup of coffee but ate little, if any, breakfast. He drove in his automobile from his home to the fire tower, and climbed the steps to the top of the tower. His wife had fixed a lunch for him, but the lunch box was found after his death with the food untouched. He worked at the job during the day. Before he left the tower, he reported to two fire fighters in the vicinity, Wilson and Knippers, that he had suffered two heart attacks or disturbances during the day, and that he was sick.

About 7:30 o'clock that evening Schilling descended the stairs at the tower and drove in his car to his home. Upon arrival he complained to members of his family of pain in the region of his heart, chest, and stomach. He went to bed shortly after getting home and ate no supper. His complaints continued throughout the night until he died on the next morning, March 15, at 4:45 a.m.

All four doctors who testified concluded that Schilling died of myocardial infarction. Dr. Pittman and Dr. T. D. La Becki testified for claimants that the substantial physical effort connected with climbing the stairs at the tower produced the coronary insufficiency which resulted in death; and that it aggravated a pre-existing chronic heart disease. On the other hand, the two doctors who testified for the employer and carrier, Dr. Joseph P. Melvin, Jr., and Dr. William H. Rosenblatt, said that there was no causal connection between the death and the climbing of the stairs to the tower; that Schilling's death following the climbing of the stairs and his duties on that day were co-incidental; and that he would have had the heart attack anyway. However, on cross-examination both of the appellees' doctors said that it would be dangerous for a person with a pre-existing heart disease to climb such steep and high stairs, and that under such circumstances such activity and exertion would aggravate the heart condition. So the question of whether the exertion in connection with Shilling's employment aggravated his heart condition, or accelerated or combined with the disease to produce his death was a question of fact for the commission.

In W. G. Avery Body Co. v. J. C. Hall, 79 So. 2d 453, 457 (Miss. 1955), we summarized the rules of law applicable to cases of this sort: "This Court in numerous cases has established the principle that a pre-existing disease or infirmity of an employee does not disqualify a claim if the employment aggravated, accelerated or combined with the disease or infirmity to produce the

death or disability for which compensation is sought. Ingalls Shipbuilding Corporation v. Byrd, 1952, 215 Miss. 234, 60 So. 2d 645; La Dew v. La Borde, 1953, 216 Miss. 598, 63 So. 2d 56, 825; 1 Larson, Workmen's Compensation Law (1952), Section 12.20. The work must be only a contributing and not the sole cause of the injury. Pearson v. Dixie Electric Power Ass'n., Miss. 1954, 70 So. 2d 6. Another established rule, of particular importance here, is that it is not necessary to show that the exertion which concurred in precipitating the harm was in itself unusual or beyond the routine of the employment. Provided the causal relation is shown, the exertion may be the usual and customary, and still satisfy the requirements that the injury be accidental and arise out of the employment. Cowart v. Pearl River Tung Co., 1953, 218 Miss. 472, 67 So. 2d 356; Pearson v. Dixie Electric Power Ass'n., supra; 1 Larson, Workmen's Compensation Law, Sections 12.20, 38.30.''

Other more recent cases applying these principles to death resulting from heart attacks where the employment aggravated a pre-existing heart disease are: Railway Express Agency v. Hollingsworth, 221 Miss. 688, 74 So. 2d 754; Thornbrough Well Service Co. v. Brown, 78 So. 2d 159 (Miss. 1955); Miss. Products Inc., v. Gordy, 80 So. 2d 793 (Miss. 1955); Southern Engineering and Electric Co. v. Chester, 83 So. 2d 811 (Miss. 1955).

Mississippi Code of 1942, Sec. 6998-28, provides: ''(a) In making an investigation or inquiry or conducting a hearing, the commission shall not be bound by common law or statutory rules of evidence or by technical or formal rules or procedure, except as provided by this act, but may make such investigation or inquiry or conduct such hearing in such manner as best to ascertain the rights of the parties. Declarations of a deceased employee concerning the injury in respect of which the investigation or inquiry is being made of the hearing conducted shall be received in evidence and shall, if cor-

roborated by other evidence, be sufficient to establish the injury.''

■■ This statute clearly authorized the admission in evidence of testimony of the several witnesses who described the numerous complaints made by Schilling in respect to the pains he felt in his chest and the two heart attacks on the tower that day. The statute provides that ''such declarations shall be received in evidence''. The second part of that sentence deals with the effect of such complaints if corroborated by other evidence; and, of course, there was ample evidence in corroboration of such complaints, including the testimony of the four physicians, and the fact that Schilling ate no lunch that day while he was on the tower, and the fact that he undisputedly died from a heart attack. Several witnesses testified to his complaints and they were corroborated by his fellow employees, Wilson and Knippers, with whom Schilling talked around 6:30 in the evening.

The remaining point is with reference to the determination of the average weekly wages of the employee. Code of 1942, Sec. 6998-16, provides: ''Except as otherwise specifically provided, the basis for compensation under this act shall be the average weekly wages earned by the employee at the time of the injury, such wages to be determined from the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by fifty-two; but if the injured employee lost more than seven days during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. When the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall

be followed; provided, however, that results just and fair to both parties will thereby be obtained. Where by reason of the shortness of time during which the employee has been in the employment of his employer it is impracticable to compute the average weekly wages by the above method of computation, regard shall be had to the average weekly amount which, during the first fifty-two (52) weeks prior to the injury or death, was being earned by a person in the same grade, employed at the same or similar work in the community.''

We do not think that the Legislature intended that seasonal workers be dealt with differently from any other workers. Since Schilling had not worked for the Forestry Commission for a period of 52 weeks immediately preceding the date of the injury, the first method of computation of the average weekly wages set forth in the first sentence of the statute is not applicable. His employment in previous years by the Forestry Commission does not support the finding that he was continuously employed by it for six years. The pertinent provision is the second sentence. Since Schilling's employment extended for a period of less than 52 weeks, the method to be followed is to divide the earnings during that period by the number of weeks and parts thereof during which the employee earned wages.

In earlier cases dealing with seasonal work the test urged by appellees and followed by the circuit court was not applied. Reyer v. Pearl River Tung Co., 219 Miss. 211, 68 So. 2d 442 (1953); Pearl River Tung Co. v. Estate of John, 83 So. 2d 95 (Miss. 1955); Pepper v. Barrett, 82 So. 2d 580 (Miss. 1955); Toler v. Nashville C. and St. L. Railway, 117 S. W. 2d 751 (Tenn. 1938), deals with a substantially similar statute and is in accord with our views.

The circuit court was in error in reducing the average weekly wages from the figure determined by the Workmen's Compensation Commission. The judgment of the

circuit court is affirmed in part on the issue of liability and coverage, and reversed in part as to its determination of the employee's average weekly wages, and the order of the Workmen's Compensation Commission is reinstated and affirmed, and the case remanded.

Affirmed in part, reversed in part, and order of workmen's compensation commission reinstated and affirmed, and cause remanded.

*Roberds,* P.J., and *Lee, Arrington* and *Gillespie,* JJ., concur.