Lewis *v.* Trackside Gasoline Station, et al.

No. 40830          June 9, 1958          103 So. 2d 868

*Wingo & Finch*, Hattiesburg, for appellants.

*Satterfield, Shell, Williams & Buford, Carey E. Bufkin,* Jackson, for appellee.

ARRINGTON, J.

Mrs. Hattie Lewis, widow, and two minor children of Joe D. Lewis, filed claim for benefits under the Mississippi Workmen's Compensation Law against the Trackside Gasoline Station and Pacific Indemnity Company, its carrier. From a judgment of the Circuit Court of Forrest County affirming the order of the Commission in denying compensation, the claimants appeal.

The evidence in this case shows that on April 1, 1956, Easter Sunday, the deceased, Joe D. Lewis, age 52, was working for the Trackside Gasoline Station; that he reported for work that morning sometimes between seven and eight o'clock; that his duties were those of a filling station attendant, servicing cars with oil, gasoline, checking batteries, radiators, etc. It was shown that this station did no maintenance service to cars, such as fixing tires, etc. The evidence shows by all the witnesses that this station was located on Highway 11, and did a good business, regularly selling over 25,000 gallons of gasoline per month; that on this Easter Sunday morning many of the other stations in town were closed, and this resulted in an increase of business to this station. B. C. Lewis, Sr., was manager of the station, and according to his testimony, he left the station at approximately 9:40 A.M. to attend Sunday School and Church, and he returned at 11:20 A.M. He left Joe Lewis, the deceased to attend the station. It was also shown that this station had six gas pumps and one diesel pump, and in addition, cigarettes and cold drinks were sold.

One W. F. Nicholas, Jr., a member of the Police Department of the City of Hattiesburg, testified that he

and his brother appeared at the station sometime between 10 and 11 o'clock in the morning and observed Lewis putting gasoline in an automobile and that several cars were at the station at that time; that Lewis was doing all the servicing by himself; that in a few minutes Lewis approached him and asked him if he and his brother would wait on the cars for awhile, because he was sick; that he and his brother did and they were kept busy; that he went into the office to see about Lewis and found him with his head and arms leaning on the desk; that later two large trucks came in the station, and after servicing them, he again went to see about Lewis, and at that time found him lying on the floor on his back, and Lewis asked him to take him to the hospital. This the witness did, leaving the station in charge of his brother. Lewis was in intense pain and he could not talk, and was unconscious upon arrival at the hospital. Lewis remained in the hospital until his death on April 21, 1956.

A former manager of the station for three years testified to the arrangement of the station and its large business, and that it required more than one man to handle the business, and it was generally admitted by all the witnesses that this was a busy station on weekends.

Dr. R. E. Schwartz, a heart specialist, testified that he had treated the deceased since January 1, 1945; that he suspected coronary trouble at that time; that he treated him in 1949, and that he came for a check-up in March 1952; that he found he was suffering with coronary insufficiency; that he examined him twice in 1953 and again in September 1955; that at this time he had bursitis and his heart showed improvement; that he treated him for bursitis monthly and Lewis received his last treatment on March 30, two days before his fatal heart attack; that at that time he was given a shot for bursitis. Dr. Schwartz testified at length and stated that he had advised the deceased not to do anything that would create any exertion to any extent, but that he was a man that wouldn't

follow advice; that he felt he had to work and "wasn't as sick as I made out he was." The following questions and answers appear in the record:

"Q. Doctor, it is in testimony that on April 1, 1956, Easter morning, the deceased, Mr. Joe D. Lewis, was working at the Trackside Service Station in Hattiesburg on Highway 11 on Broadway Drive and that he was, on that morning, between ten thirty and eleven, undertaking to service a number of automobiles and trucks alone, without any help, at that time. I'll ask you, as a heart specialist, doctor, whether or not that type work by that man in his then known condition would not have likely produced stress and strain?

"A. It will produce stress and strain, yes.

"Q. Would you then state to the court, doctor, as a heart expert, that a man doing the type work I have just demonstrated, raising the hood of a car, then filling the car with gas, then washing the windshield and going to another car, in the normal conduction of a filling station as you knew it, and while doing that work suffered this heart attack, would you tell the court you would expect that type exertion to bring about the attack?

"A. I'd like to qualify that.

"Q. Would it aggravate it?

"A. It could or it could not. We have any number of patients like that that could go along and do that work and not have any ill effects from it. We have a certain type of a nervous temperament and they could do it ninety-nine times and then the hundredth time have an attack. We feel it could bring it on.

"Q. Doing that type work, with a patient with that type heart trouble, would you expect that type work to produce that?

"A. Any severe muscle exertion would aggravate it and could produce it.

"Q. Could aggravate it and could cause it, couldn't it?

"A. Could aggravate it and cause it.

Mrs. Hattie Lewis, widow of the deceased, testified that she went to the hospital to see her husband and asked him what happened, and he said: "I got too hot and overworked and exhausted, and this spell came over me. It was the second one I had that morning, and the first one I had to lay down and the second one, I fell down that morning." He further said: "If I live over this, I won't be able to do that any more; I have enough for the Trackside Gasoline Company to tell them I won't ever be able to do that work any more by myself."

Dr. F. E. Tatum testified in behalf of the appellees, and it was admitted that he was a heart specialist. Dr. Tatum testified that he had seen the deceased on two instances in his office around February or March 1955; that he had also talked to Dr. Schwartz about the deceased; that he had examined an electrocardiagram of the deceased at the Forrest County General Hospital several days before his death; that his diagnosis was acute myocardial infarction, which is a state of the heart muscles due to coronary thrombosis. Upon answer to a question of the appellee's attorney with reference to his duties at the station, he testified that he did not think that that degree of activity would play a definite part and he further testified that activity might under certain circumstances where the exertion was severe or strenuous, and in the absence of showing a type of strenuous exertion, he would not be inclined to say that his work had anything to do with his illness. Dr. Tatum further testified that the work at the station could have aggravated his heart condition and that it might be aggravated by any kind of physical exertion and that over-exertion could certainly aggravate it. Upon recross-examination, the doctor testified as follows:

"Q. If this man was suffering with coronary thrombosis and was engaged in the type work I just mentioned, the condition of coronary thrombosis would be aggravated by that exertion, would it not?

"A. Yes, if he already had coronary thrombosis, any exertion, short of complete stillness in bed, would aggravate it.

"Q. You would expect the condition of coronary thrombosis from a person who had for eleven years this insufficiency, wouldn't you?

"A. It could. Of course, it depends on the degree, it depends on the particular person's case and the degree of the exertion.

"Q. But it would be reasonable to assume that a man with that insufficiency for eleven years who finally developed coronary thrombosis, that condition, by over-exertion, could very easily aggravate that condition and produce myocardial infarction, isn't that right?

"A. It is difficult to say any exertion or over-exertion itself would produce the coronary thrombosis.

"Q. You wouldn't recommend a patient to overexert himself if he had that condition?

"A. No, sir, I sure wouldn't, my patients. It would be discomforting.

"Q. And it would be hazardous.

"A. Yes, sir."

The attorney-referee found that the deceased was working at the time of his fatal attack and that his injuries arose out of and in the course of his employment, which resulted in his death on April 21, 1956, and awarded compensation benefits. On appeal to the commission, the commission reversed the finding of the attorney-referee and denied compensation on a two to one decision. The commission reviewed the evidence and found that the proof did not reveal that "the deceased did anything that would tend to exert him or place him under undue strain or tension which would contribute to any pre-existing condition." We think this was error. The commission reviewed the testimony of Drs. Schwartz and Tatum and concluded that the complainants completely

failed to prove that the death of the deceased arose out and in the course of his employment.

After a careful examination of the record in this case, we are of the opinion that the order of the commission in reversing the attorney-referee in the award of benefits was manifestly wrong and against the overwhelming weight of the evidence. We have held that it is not necessary to show that there was any exertion beyond the routine work of the employment. In Schilling v. Miss. State Forestry Commission, 85 So. 2d 562, the Court said:

"In W. G. Avery Body Co. v. Hall, Miss. 1955, 79 So. 2d 453, we summarized the rules of law applicable to cases of this sort: 'This Court in numerous cases has established the principle that a pre-existing disease or infirmity of an employee does not disqualify a claim if the employment aggravated, accelerated or combined with the disease or imfirmity to produce the death or disability for which compensation is sought. Ingalls Shipbuilding Corporation v. Byrd, 1952, 215 Miss. 234, 60 So. 2d 645; La Dew v. La Borde, 1953, 216 Miss. 598, 63 So. 2d 56, 825; 1 Larson, Workmen's Compensation Law (1952), Section 12.20. The work must be only a contributing and not the sole cause of the injury. Pearson v. Dixie Electric Power Ass'n., 1954, 219 Miss. 884, 70 So. 2d 6. Another established rule, or particular importance here, is that it is not necessary to show that the exertion which concurred in precipitating the harm was in itself unusual or beyond the routine of the employment. Provided the causal relation is shown, the exertion may be the usual and customary, and still satisfy the requirements that the injury be accidental and arise out of the employment. Cowart v. Pearl River Tung Co.,1953, 218 Miss. 472, 67 So. 2d 356; Pearson v. Dixie Electric Power Assn., supra; 1 Larson, Workmen's Compensation Law, Sections 12.20, 38.30.'

"Other more recent cases applying these principles to death resulting from heart attacks where the employ-

ment aggravated a pre-existing heart disease are: Railway Express Agency v. Hollingsworth, 221 Miss. 688, 74 So. 2d 754, 75 So. 2d 639; Thornbrough Well Servicing Co. v. Brown, Miss. 1955, 78 So. 2d 159; Mississippi Products, Inc., v. Gordy, Miss. 1955, 80 So. 2d 793; Southern Engineering and Electric Co. v. Chester, Miss. 1955, 83 So. 2d 811.''

The testimony of Dr. Schwartz for the claimants and Dr. Tatum for the appellees clearly shows that regular work such as the deceased was doing as a filling station attendant would aggravate the heart condition of the deceased. It is emphasized in the finding of the commission that the testimony in this cause disclosed that ''there was never a hood of an automobile or a truck raised, nor was water or oil placed in any vehicle.'' We think it is common knowledge to all that no one could run a busy filling station without oil and water. The commission overlooks the fact that the deceased was operating the filling station alone prior to the time Nicholas and his brother arrived. Who can say what was done? The deceased is denied the benefit of all presumptions to which he was entitled, and, furthermore, this is to be taken in connection with the testimony of his widow. We are of the opinion that the commission was manifestly wrong and their finding is not supported by substantial evidence, under the cases above cited, and also the recent case of Rosa Lee Williams, et al, dependents of Leon Williams, deceased, vs. Vicksburg Wholesale Produce Company, et al, 102 So. 2d 378, Advance Sheet No. 3. Cf. Mrs. Nola Poole v. R. F. Learned and Son, et al, No. 40,856, this day decided.

It follows that the order of the commission overruling the finding of the attorney referee is erroneous as well as the judgment of the circuit court affirming the same. The case is reversed and judgment entered here for the claimants, appellants here, and the cause remanded to the commission for supervising the payments due.

An attorney's fee of 33-1/3% of the amount recovered is allowed to claimants' attorneys for all services rendered in this cause.

Reversed and judgment rendered here for appellants, and remanded.

*Roberds, P. J.,* and *Kyle, Ethridge,* and *Gillespie, JJ.,* concur.

GILLESPIE, J. concurring:

Being bound by decisions already rendered, I concur.