RODGERS, Justice.
This is an appeal in a workmen’s compensation case by the dependents of Louis K. Ingram, deceased, an employee of Hys-ter Sales & Service, Inc. They appeal from an adverse decision of the Workmen’s Compensation Commission and from an adverse judgment of the Circuit Court of Forrest County, Mississippi. A resume of the testimony presented to the attorney referee is shown in the following synopsis.
Louis K. Ingram was fifty-one (51) years old at the time of his death. He was employed by Hyster Sales & Service, Inc., as a travelling mechanic in the spring of 1967. He was assigned to a territory covering all South Mississippi and five (5) parishes in Louisiana. He was on full twenty-four (24) hour call for service on machines sold by his employer; he had no fixed hours of work and often worked early and late; he was furnished a truck equipped with tools, parts and accouterments essential and necessary to repair hysters used by his employer’s customers. Mr. Ingram had for some time stayed at Blue Gables Motel in Hattiesburg, Mississippi. He had used this motel as headquarters, and at the time of his death, he had some of his equipment stored at the motel.
On May 15, Mr. Ingram worked at Grantham Wood Yard, which was in a southerly direction from Blue Gables. On May 16, Mr. Ingram worked at Columbia, Mississippi. On the morning of May 17, Mr. Ingram called the office of the Blue Gables, inquired as to the time and stated that it was too early to make a long distance call. At or near 7:30 in the morning, two soldiers travelling south on Highway 49 noticed a truck, with the hood up, parked on the road to their left, headed north. They saw a man lying in front of the truck with his arms raised as if he were running or trotting. They turned around as soon as possible and went back to the truck. They found Mr. Ingram almost directly in front of the truck, lying on the ground. They examined him and found no evidence of pulse or hemorrhage. They attempted to revive Mr. Ingram by resuscitation1 pressure on the chest.:
One of the soldiers opened the door of the truck and observed a “very acid smell” which was “stifling and choking.” He looked under the hood of the truck and discovered a wire had fallen on the manifold causing a short circuit and there was a dark area thought to be caused by fire or smoke in the front compartment of ’ the truck. The wires inside the truck cab were burned and the ignition key was off. The other soldier testified that he could tell something had been burned. Other witnesses testified that the fire wall of the truck was “smoked up” and “the wires were burned, something had burned.” The employer testified that the “wire harness burned from the alternator under the dash inside the cab” and that “there had been smoke in the cab.”
Mr. Ingram was dead upon arrival at the hospital. The receiving doctor testified as to the color of the deceased and that he had no firm explanation of his death, but stated he could have died from coronary thrombosis or a stroke. He was asked hypothetical questions embodying the facts as to the place Mr. Ingram was found and the fire in the truck in an effort to show causal connection between the injury and the employment of the deceased. The doctor said:
“A. Well, I think it’s possible, of course, that if a person thought the truck was on fire everyone’s bodies’ defenses are such that it makes the *502 heart immediately beat faster. It does put an extra spurt of adrenalin to the body system and gives the body more fight or flight and in that respect does add additional strain upon the heart beyond any doubt, but whether or not that occurred in that particular man is a moot question — ; it could have.”
The defendants introduced another doctor who had not seen deceased, but in answer to a hypothetical question, testified that he was of the opinion that the deceased died of either a heart attack or a hemorrhage at the base of the brain. He further testified that, in view of the history of deceased’s hypertension, it was his opinion that his demise was not related to the work activity of the deceased.
There is testimony in the record showing that the deceased had suffered with high blood pressure in the past, but that at the time of his death this condition was under control, although he took medication at times. There is other testimony to the effect that the deceased intended to go to New Orleans to a pine show and that he had an appointment on the afternoon of his death to look at a lot where he expected to build a house, and it is also stipulated that Mr. Ingram said he might go there in the morning.
The attorney referee determined that the evidence failed to establish that decedent’s death was probably caused by his work or that his work aggravated, accelerated or contributed to his injury. The Workmen’s Compensation Commission approved the opinion of the attorney referee and on appeal to the circuit court, the order of the Workmen’s Compensation Commission was affirmed.
A study of the law applicable to the facts in this case has convinced us that the Workmen’s Compensation Commission and the circuit court reached an erroneous conclusion in the trial of this claim, for which this Court must reverse. It is apparent that the circuit court and the Commission overlooked an ancient common law rule relating to acts of a servant in an emergency to preserve the property of the master.
In workmen’s compensation cases, the Commission is not bound by the evi-dentiary rules of a trial court with reference to the weight of the testimony required to establish a claim. Section 6998-28, Mississippi Code 1942 Annotated (1952); Cf. Sanford v. A. P. Clark Motors, 45 So.2d 185 (Fla.1950). Moreover, facts and conclusions may be drawn from the evidence sufficient to establish by circumstantial evidence that the employee was engaged in his employer’s business when the accident or injury occurred. See cases cited in L. B. Priester & Son, Inc. v. Dependents of Bynum, 247 Miss. 664, 157 So.2d 399 (1963); Suggestion of Error Overruled, 244 Miss. 185, 142 So.2d 30 (1962).
The evidence in this case shows clearly that the deceased employee was on twenty-four (24) hour duty; that his duties involved travelling over a large area in Mississippi and Louisiana in a truck furnished by his employer; that he was an industrious employee; that on the morning of his death he had left his headquarters and had travelled south on a highway in a direction that he would have had to travel in order to reach Grantham Wood Yard, the place he expected to work; that for some reason he had turned around and was heading back toward his headquarters; that his employer’s truck was on fire; that he had moved off the highway and opened the hood of the truck, which was clearly for the purpose of doing something to put out the fire and preserve the property of his employer.
It is suggested by certain evidence offered during the trial that the deceased had been on a private mission before his death, but it is obvious that at the instant of his death he was engaged in performing his duty to his employer to preserve his property from damage, and was therefore acting “in the course of employment.”
*503 The rule, stated throughout the early cases with reference to liability of a master for injuries to a servant, recognizes that injuries which are sustained by an employee, who, when confronted with a sudden emergency, acts in an attempt to save himself from injury or to save his employer’s property, arise out of and in the course of the employment. Legan & McClure Lumber Company v. Fairchild, 155 Miss. 271, 124 So. 336 (1929); Atlantic Coastline R. Co. v. Russell, 215 Ala. 600, 111 So. 753 (1927); 56 C.J.S. Master & Servant § 386 (1948).
This rule has been- brought forward into the field of workmen’s compensation law. Larson has this to say on the subject:
“Under familiar doctrines in the law relating to emergencies generally, the scope of an employee’s employment is impliedly extended in an emergency to include the performance of any act designed to save life or property in which the employer has an interest. * * *
“It is, of course, too obvious for discussion that emergency efforts to save the employer’s property are within the course of employment, even after hours. * * * ” (Larson, Workmen’s Compensation Law, Vol. 1, § 28.11, at pages 427, 428 [1969]).
In the case of Andrews v. Emporium Forestry Company, 250 N.Y. 592, 166 N.E. 336 (1929), it was shown that an employee ran to put out a fire at his residence, which was the property of his employer. He had short breath and discomfort. Fifteen (15) days later he died of heart failure. The Cardozo Court held that his injury and death arose out of and in the course of his employment under the workmen’s compensation law of that state. See also Parrish Esso Service Center v. Adams, 237 Ark. 560, 374 S.W.2d 468 (1964); Leffert v. Industrial Accident Commission, 219 Cal. 710, 28 P.2d 911 (1934); Wetlaufer v. Howse, 146 Kan. 500, 71 P.2d 879 (1937); Meaney v. Keating, 200 Mise. 308, 102 N.Y.S.2d 514 (1951) (employee who lived near employer’s plant ran to fight fire in middle of night and was injured); Bernadine v. National Transp. Co., Sup., 43 N.Y.S.2d 866 (1943); Birch v. Budd, 256 A.D. 53, 8 N.Y.S.2d 781 (1939) (fire in radio in apartment furnished by employer); Howell v. Craig Colony for Epileptics, 255 A.D. 908, 7 N.Y.S.2d 753 (1938); Hiers v. Brunson Const. Co., 221 S.C. 212, 70 S.E.2d 211 (1952); Texas Employers’ Insurance Association v. Thomas, 415 S. W.2d 18 (Tex.Civ.App.1967); Federal Underwriters Exchange v. Crow, 118 S.W.2d 1073 (Tex.Civ.App.1938); 6 A.L.R. 1248 (1920); 50 A.L.R 1148 (1927); 58 Am. Jur. Workmen’s Compensation § 263, (1948); 99 C.J.S. Workmen’s Compensation § 257(2) (1958).
We are, therefore, constrained to hold that at the time of the death of Louis K. Ingram he was acting “within the course of his employment.”
The appellees contend, however, that Mr. Ingram’s injury and death did not arise out of, nor was it causally connected with his employment. In support of this contention, appellees point out that a doctor testified, on behalf of the defendants, that in his opinion Mr. Ingram died from an abnormality related to his heart resulting from impaired circulation to the heart, or a hemorrhage in the base of his brain, and in either case, his activity did not contribute to his death. On the other hand, the receiving doctor at the hospital was of the opinion that fright, growing out of the knowledge that the truck was on fire, would add strain upon the heart. There can be no doubt from the proof in this case that the truck was on fire and that the deceased was making an effort to do something about.it at the time of his death. Moreover, prior to the time the truck caught fire, the deceased had been a hard worker and that his health had permitted him to engage in the activity of a mechanic.
This Court has consistently held in a long line of cases that when it is shown that an employee was found dead at a *504 place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, there is a presumption that the accident arose out of and in the course of the employment. L. B. Priester & Son, Inc. v. Bynum, 244 Miss. 185, 141 So.2d 246 (1962) ; El Patio Motor Court, Inc. v. Dependents of Long, 242 Miss. 294, 134 So.2d 437 (1961); M. & W. Construction Co. v. Dependents of Bugg, 241 Miss. 133, 129 So.2d 631 (1961); Meridian Mattress Factory, Inc. v. Morris, 239 Miss. 792, 125 So.2d 533 (1960); Shannon v. City of Hazlehurst, 237 Miss. 828, 116 So.2d 546 (1959); Winters Hardwood Dimension Co. v. Harris’ Dependents, 236 Miss. 757, 112 So.2d 227 (1959); Russell v. Sohio Southern Pipelines, Inc., 236 Miss. 722, 112 So. 2d 357 (1959); Watson v. National Burial Association, Inc., 234 Miss. 749, 107 So.2d 739 (1958); Bryan Bros. Packing Co. v. Dependents of Murrah, 234 Miss. 494, 106 So.2d 675 (1958); Goodnite v. Farm Equipment Co., 234 Miss. 342, 103 So.2d 391 (1958); Lewis v. Trackside Gasoline Station & Pacific Indemnity Co., 233 Miss. 663, 103 So.2d 868 (1958); Pennebaker v. Parker, 232 Miss. 725, 100 So.2d 363 (1958).
In the case of Leake County Cooperative (A.A.L.) v. Dependents of Barrett, 226 So.2d 608 (Miss.1969), the proof showed that an employee drove his employer’s truck onto the shoulder of the road within sight of witnesses and was immediately found dead. This Court said that the presumption of causal connection was applicable and said:
“ * * * This presumption has been held to be a rebuttable presumption which places upon the employer the duty of coming forth with evidence that the employee’s death was not work connected, but which does not shift the burden of proof. * * *” (226 So.2d at 611).
In the case of Washington v. Greenville Manufacturing & Machine Works, 223 So. 2d 642 (Miss.1969), the deceased was found dead just inside the building where deceased worked. A doctor testified that the deceased worker “died of a heart attack which was due 100 percent to a preexisting condition and had no relation to his employment.” This Court, after having again repeated the presumption rule above set out, stated:
“ * '* * Assuming that the testimony of the doctor is sufficient evidence to support the finding by the commission that Washington died as a. result of a heart attack, there is still the presumption that the heart attack resulting in death was causally connected to Washington’s work activities. * * * ” (223 So.2d at 646).
In the instant case there is sufficient evidence of fact, taken with the presumption of causal connection of the injury with the work being performed by the deceased at the time of his death, to establish that the decedent met his death from injury arising out of and in the course of his employment. Bryan Bros. Packing Co. v. Dependents of Murrah, 234 Miss. 494, 106 So.2d 675 (1958). In fact, there is no evidence to the contrary except the opinion of a doctor that heart attacks and strokes cannot be caused by an employee’s work. We have often held otherwise. We are convinced that the activity of the deceased at the time of his death contributed to his death. We must reverse the judgment of the circuit court and reverse the order of the Workmen’s Compensation Commission. We hold that the death of Louis K. Ingram is compensable under Mississippi Workmen’s Compensation Law, Section 6998-04, Mississippi Code 1942 Annotated (Supp.1968). However, inasmuch as there is testimony in the record indicating that the deceased had previously suffered from high blood pressure, we therefore remand the case to the Workmen’s Compensation Commission to determine whether or not the deceased was suffering from a preexisting disease which materially contributed *505 to his death, and if so, what proportion such disease contributed to his death.
Reversed and remanded.
ETHRIDGE, C. J., and JONES, IN-ZER and SMITH, JJ., concur.