COWART *v.* PEARL RIVER TUNG Co., et al.

Oct. 19, 1953

No. 38841          39 Adv. S. 5          67 So. 2d 356

*Hall & Callender,* Columbia; *Grayson B. Keaton,* Pica-
yune, for appellant.

474

*H. H. Parker,* Poplarville, for appellee.

McGEHEE, C. J.

This litigation arose under the Workmen's Compensation Law, Chapter 354, Laws of 1948, as amended by Chapter 412, Laws of 1950, (Section 6998, et seq., Title 25, Vol. 5-a, Revised Miss. Code of 1942) and grew out of the death of Rosa May, a Negro woman, who appears to have been at least fifty-five years of age on December 18, 1950, when she died of a "massive cerebrovascular accident" (explained in the testimony as a rupture of a blood vessel on the brain) while actually engaged about the work of her employment in picking up tung (oil) nuts under the trees in the tung orchard of the appellee, Pearl River Tung Company.

Section 6998-04 of Vol. 5-a of said Code provides that: "Compensation shall be payable for disability or death of an employee from injury arising out of and in the course of employment, without regard to fault as to the cause of the injury."

The right of the appellant, Carrie Cowart, as guardian of Clara May, a non compos mentis, and also as guardian of Charlotte May and John Lee May, the small

minor children of said non compos mentis, who is the daughter of the deceased Rosa May, to prosecute this proceeding under the Workmen's Compensation Act is not challenged, since it is virtually conceded that the wards were solely dependent upon Rosa May for their support and maintenance at the time of her death. Nor is the regularity of the guardianship proceedings and the validity of the decree which authorized the bringing of the suit by the guardian in any wise brought into question.

In other words, the sole question presented to the attorney-referee and the commission for decision was whether or not the death of Rosa May, who was admittedly an employee of the appellant and actually engaged in performing the duties of her employment at the time she was taken ill, was caused from an injury arising out of and in the course of her employment.

The attorney-referee denied liability on the claim presented by the guardian and his action was affirmed by two members of the three-member commission, including the said attorney-referee. Appeal to the circuit court was under Section 6998-26 of Vol. 5 of said revised Code, and the circuit court affirmed the action of the commission although expressing some doubt in the judgment rendered as to the correctness thereof.

The testimony is without conflict as to the nature and character of the work in which the employee was engaged at the time she was taken ill. The only apparent conflict in the testimony is in the particulars of what was testified to by the medical experts. We shall later discuss whether the conflict in this testimony is one of substance as to whether the preexisting illness of the employee was aggravated by the exertion required of the employee in the performance of her work, since the exertion is not required to be the sole, proximate cause of the injury which resulted in her death.

The employee was working with twenty-three others, at the moment she was taken violently ill, while bending or stooping over to pick up the tung (oil) nuts on the occasion in question. She had been engaged in this work during four previous seasons of the picking up of these nuts under the trees in the orchard of the appellant, Pearl River Tung Company, and had sustained no previous injury on account thereof. Nor is it shown that any of the other employees had sustained an injury in connection with the performance of this work, some of whom had likewise been employed during previous seasons.

The manner of doing the work was shown to be that two of the employees would be assigned a row of trees in the orchard and that one would pick up the nuts on one side of the tree and the other those on the other side; that the trees were about twenty-two feet apart and that the employees would each have a wire net basket that would hold a bushel of the nuts; that no basket would be filled more than half full while being carried from tree to tree; that thereupon the employee would use an empty basket while picking up enough additional nuts to pour into the original basket and completely fill it; and that a sack man would then empty the completely filled basket into a sack and credit the worker with the bushel of nuts; that the work was known as "piece work" and that each employee was paid so much per bushel, and had the right to work for only the number of hours that the employee might desire to work and was thereby able to control his or her own activities as to the amount of exertion to be undergone before quitting for the day.

However, it was further shown that ordinarily the workers would begin at 7 a.m. and continue until 12 noon and then resume work at 1 p.m. and continue until 4 p.m. It was further shown that the nuts were, of course, picked up off the ground underneath the trees and that ordinarily the employee performed the work by stooping

or bending over to pick the nuts off the ground and put them in the basket; that while employees could get on their knees or crawl on the ground to pick up the nuts, they could pick up a greater quantity by stooping or bending over while standing and doing their work, and that this was the method ordinarily employed by the workers.

On the occasion in question the employee, Rosa May, had worked from 7 o'clock in the forenoon until 12 noon and had resumed her work at 1 p.m., and at about 2 p.m. while she was actually stooping or bending over and picking up nuts she complained, called a coworker and stated she was turning blind, and this attracted the attention of other employees who said that she was staggering before she was assisted to lay down and was then carried to a hospital at Bogalusa, Louisiana, where she died at about 7 p.m. on the same day.

The surgeon's report, signed by Dr. G. H. St. Dizier of Bogalusa, Louisiana, and who did not testify in the case, was introduced in evidence by agreement, and it disclosed that the patient was in a comatose condition upon arrival at the hospital, and that a bystander related to him that the patient "was bending over tung nuts and fell over unconscious." This surgeon stated his objective findings to be: "Massive cerebrovascular accident; patient was comatose, completely unable to respond to stimuli, or move any extremity."

The employer's first report, signed by the President of the appellant Pearl River Tung Company, which was introduced in evidence by agreement, disclosed that the accident was caused from "picking up tung nuts" and that the employee "fainted, was taken to the hospital, and never regained consciousness." He further reported that the nature and location of the injury was "massive cerebrovascular accident (brain)."

The proof further disclosed without dispute that on October 13, 1948, the employee had high blood pressure

of 220/100 and that this was of course considered high; that in September, 1950, her blood pressure was shown to be 160/90, and there was no showing as to the status of her blood pressure on December 18, 1950, which was the date of her death. However, Dr. J. S. Prine, a regularly licensed physician and surgeon of forty-six years experience, testified on behalf of the complainant that a cerebrovascular accident is "a ruptured blood vessel on the brain and it occurs when they are called accidents, while they labor or do strenuous work or stooping or bending over." He testified unequivocally that "stooping, bending, lifting or strenuous work causes a rush of blood to the head" and that where a patient "has high blood pressure, there would be the danger of having a ruptured blood vessel on the brain." He was asked: "Doctor, if you have a patient with high blood pressure, what is the proper treatment? A. Absolute rest, refrain from all straining work—stooping, bending, lifting —and quiet, refrain from eating heavy diets, a complete rest with sedative, phenobarbital in the later state. * * * Q. Doctor, what is the danger, if any, of a patient with high blood pressure stooping over to do any kind of work? A. Stooping over with high blood pressure results in a rush of more blood to the head and it is liable to cause a ruptured blood vessel." He testified at some length, and the substance of his testimony is that the employee's death was from increased blood pressure on the brain that was caused from the stooping and bending while performing her work of picking up the tung nuts; that under the history of the case of the high blood pressure of this employee it was his opinion that the stooping caused her death.

Dr. H. B. Cowart, a witness for the employer, and who is also a regularly licensed, reputable and practicing physician, testified that massive cerebrovascular accident is the same as cerebral hemorrhage or a stroke, and that from the history of this case her injury resulted from

her condition prior to the time she picked up the nuts, and that with this history of the case she could have suffered a massive cerebrovascular accident "while walking along the street." He further testified, however, that when the (blood) pressure gets too strong, we find a rupture, and that he thought that this pressure may have been building up for days and days. Dr. Cowart, admitted that he would not advise a patient, if he had high blood pressure, to stoop over and pick up tung nuts. He was further asked: "The fact is, when it gets to where the blood pressure is greater than the strength of the arteries, it's gonna happen? A. That's what I said while ago. Q. Then, actually, when stooping over and if the blood rushes to the head it will increase that blood pressure? A. I wouldn't say but what it did. That stands to reason."

As heretofore noted, the employee's blood pressure was 220/100 on October 13, 1948, and was shown to be 160/90 in September, 1950, prior to her death on December 18th of that year. Dr. Cowart testified that "the blood pressure would be regarded normal from 135 to 145 over 80 or 90. It varies with people * * *." And while it was not shown what the blood pressure of this employee was on December 18, 1950, the case was tried and briefed upon the theory that she had high blood pressure at the time she had the accident in question. This witness was asked "has a person with high blood pressure any business stooping, especially where the work, or employment, would require stooping for a period of six or eight hours a day?" A. "Ordinarily, if you had it, we advise against it. So often you have it and don't know about it."

There was some testimony in regard to this employee having eaten a dry sweet potato and an apple at the noon hour, within approximately one hour before the accident, and Dr. Cowart was asked "Would you say that brought it on?" A. "It could have, but I wouldn't say it did."

But, assuming that Rosa should not have eaten the sweet potato and apple at the noon hour, and that eating the same may have contributed to the accident, this fact would not justify the denial of the claim if the stooping and bending while picking up the tung nuts had contributed to, aggravated or accelerated the cerebral hemorrhage that caused her death. While Dr. Cowart did testify her death "was a result of her condition prior to the time she picked up nuts," he did not testify that the stooping and bending which caused the blood to rush to the head did not contribute to, aggravate or accelerate the high blood pressure and cause employee to become violently ill.

In Larson on Workmen's Compensation Law, Section 12.20, p. 170, it is stated: "Pre-existing disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought."

In Peoria R. Terminal Co. v. Industrial Bd., 279 Ill. 352, 116 N. E. 651, it is said that "Even where a workman dies from a pre-existing disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident. 1 Bradbury, Workmen's Compensation 385; Elliott Workmen's Compensation Act, 7th Ed. 92, and citing cases."

An annotation in 7 A. L. R., at page 1614, states that: "It has been held that a hemorrhage was due to an accident within the Workmen's Compensation Acts where it resulted while the workman was engaged in performing his usual work, the injury under such circumstances being unforeseen and undesigned." (Citing numerous authorities.)

It is recognized in 58 Am. Jur. 756, Sec. 255, that a cerebral hemorrhage resulting from high blood pressure

is an accident within the Workmen's Compensation Acts if the same results from exertion and arises out of and in the course of employment; and it is the general rule, if not the universal one, that where the exertion contributes to, aggravates or accelerates the high blood pressure so as to precipitate the accident complained of, the claim is compensable.

As stated in paragraph four of this opinion, the sole question presented to the attorney-referee and the commission for decision was whether or not the death of the employee was caused from an injury arising out of and in the course of her employment, whereas the sole question presented to us for decision as an appellate court is whether or not there was such substantial conflict in the testimony as to afford the attorney-referee and commission a reasonable basis for the denial of the claim as the triers of fact. On the issue of whether or not the exertion which was occasioned by the employee stooping and bending to pick up the tung nuts from the ground, had contributed to, aggravated or accelerated the employee's blood pressure so as to precipitate the rupture of the blood vessel on the brain, we do not think there is sufficient conflict in the testimony of the two physicians who testified in the case to justify the denial of the claim for compensation.

It is strongly urged by the appellees that the work in which the employee was engaged was not strenuous, and this contention is correct so far as the carrying of the wire baskets from one tree to another only half-filled with nuts or the actual work of picking up the tung nuts are concerned; that is to say, the half-filled baskets were not too heavy, nor would the picking up of the nuts require any exertion if they had been picked up from a level of approximately waist high to the employee, but the exertion consisted in the stooping and bending by the employee to reach the nuts as they were being picked up from the ground.

We recognize and reaffirm the well settled rule heretofore stated under our decisions, and as announced by the text writers and in decisions of many other courts, that it is not the province of the appellate court to pass on the weight of the evidence where the same is conflicting in substantial particulars and to determine where the preponderance thereof lies. But in the instant case, we are of the opinion that as a matter of law there is insufficient legal evidence to support the finding of the attorney-referee and the commission in denying liability on the claim here involved; that the proof on behalf of the claimant is to the effect that the stooping and bending in the manner testified about would cause the blood to rush to the head, and would at least contribute to, aggravate or accelerate the blood pressure so as to bring about such an accident as is here complained of; and that the testimony on behalf of the employer to the effect that the accident *could* have happened at a time when the employee was not engaged in strenuous activity is insufficient to substantially contradict the proof on behalf of the complainant as to what was in fact the cause of the accident in this particular case.

The cause must, therefore, be reversed and a judgment rendered here as to liability, and remanded for further proceedings in accordance with the views hereinbefore expressed.

Reversed and remanded.

All Justices concur except *Hall, J.,* who took no part in this decision.