MISSISSIPPI FEDERATED COOPERATIVES, et al. *v.* JEFFERSON, et al.

No. 39538          May 2, 1955          79 So. 2d 723

*Beard, Pack & Ratcliff,* Laurel, for appellants.

152

*Paul G. Swartzfager, Raymond Swartzfager, Lunsford Casey*, Laurel, for appellees.

**KYLE, J.**

This case is before us on appeal by the Mississippi Federated Cooperatives and its insurance carrier from a judgment of the Circuit Court of the Second Judicial District of Jones County affirming an order of the Workmen's Compensation Commission approving an award of death benefits to the widow and dependent minor children of Reller Jefferson, deceased.

The record shows that Reller Jefferson was an employee of the Mississippi Federated Cooperatives, and that on April 25, 1952, while he and two other employees were working on a fertilizer pile in a bin, Jefferson fell from the fertilizer pile to the concrete floor outside the bin. The wind was whipping through the bin at the time

the accident occurred, and the workmen were forced to keep their heads down in order to keep the fertilizer out of their eyes; and neither of Jefferson's fellow-employees actually saw him fall. But he was found almost immediately after his fall lying on the floor outside the bin, unconscious, with fertilizer in his face and on his body, and the two top timbers of the grain door were lying across his body. The foreman of the plant was notified immediately and Jefferson was taken to the hospital.

Jefferson's wife testified that, when she saw him at the hospital a few hours after his admission he complained of his head, and he told her that he had fallen backward and had hurt his head. Jefferson's brother, George, testified that Jefferson told him while he was in the hospital that the last thing he remembered was that he was walking and slipped and fell, and that something gave way.

Dr. R. T. McLaurin testified that Jefferson was unconscious when he arrived at the hospital. The doctor was told that Jefferson had fallen. An examination of the skull was made and the x-ray disclosed no fracture. But, when Jefferson regained consciousness several hours later, he was disoriented and confused and complained constantly of headaches. These were symptoms of concussion, and a diagnosis of concussion was made.

Jefferson remained in the hospital until April 29. He then went to his home, but returned to Dr. McLaurin's office on May 3, 12, 22 and 28, complaining each time of headache. The doctor gave him barbiturate tablets to relieve his suffering. Jefferson returned to the office again on June 11, complaining of headache. He reported for work the latter part of June and worked eleven days, but was unable to work thereafter. He was carried to the hospital on July 5 and remained there about two weeks. A blood test was taken, and a spinal tap was made. These tests showed that he had syphilis of the blood stream and the central nervous system. Jefferson

left the hospital on July 19 without permission, but was picked up later by the deputy sheriff and brought back to the hospital. He was hospitalized again during the month of August, and upon the advice of Dr. McLaurin was taken to Oschner's Clinic in New Orleans on August 29 for a further examination. On August 30 he was taken to the Mississippi State Hospital at Whitfield and remained there until his death on October 27.

Jefferson's wife, Mattie Lee, who had married him in 1947, testified that Jefferson was well and healthy up to the time he got hurt, that he worked every day and was never off except when he had a cold. She knew of no illness that he had. He never complained about any disease. He played with the children, went to church on Sunday and was a member of a singing quartet. He acted with good sense, just like any other person would, until he got hurt. George Jefferson testified that his brother was never sick and that he had a good mind up to the time he was injured; but after his injury there was a change in his mental condition and he talked out of his head. Jesse James, who was working in the fertilizer bin at the time Jefferson fell, testified that he had worked with Jefferson at the Coops for a period of three years; that during that time Jefferson was a regular worker, and never complained about his work; that he had a normal mind; but, when he came back to work about two months after his fall, his appearance had changed and he did not work as well as he did before his fall. James stated that he saw Jefferson at Ellisville one time after he quit work. He was able to talk, but "he was talking off."

There was a conflict of opinion in the medical testimony taken by the attorney-referee on the issue as to whether there was a causal relation between Jefferson's alleged accidental injury and his subsequent disability and death.

Dr. T. J. Barnes, who testified as a witness for the claimants, testified that he was called to the home to see

Jefferson sometime during the month of August. Jefferson had a little temperature and complained of headaches. He showed signs of serious mental disturbances. The doctor ordered an ambulance and sent Jefferson to the hospital for further examination and treatment. He stated that the symptoms which he found were indicative of a head injury. He stated that he had diagnosed and treated many cases of syphilis, and that, in his opinion, a man who had an arrested case of syphilis, but was able to do his normal work notwithstanding the fact that he had syphilis in a dormant stage, would not likely collapse suddenly without having some injury to aggravate the disease. In answer to a hypothetical question, he stated that, in his opinion, an injury of the kind shown by the testimony of the claimants' witnesses could reactivate an arrested case of syphilis and throw it into an active stage and ultimately cause death. He stated that trauma might definitely localize the disease in the tissues injured.

Dr. McLaurin, who testified as a witness for the employer and its insurance carrier, stated that a man might have syphilis in a dormant stage without knowing that he had it, and that he might go for years without knowing that he had it, and that he might go for years without being bothered with it. But Dr. McLaurin stated that he would not attempt to say, whether in a case of this kind a blow on the head would likely cause an exacerbation of latent syphilis. He stated that on that point there was a conflict of medical opinion, and he did not feel that he was qualified to express an opinion on the matter. He stated, however, that he did not believe that a blow on the head would accelerate the transfer of syphilis from the blood to the nervous system.

Dr. David W. McLean, who was associated with Dr. McLaurin in the treatment of the case, testified that, in his opinion, the paresis or syphilis of the central nervous system was responsible for most of Jefferson's trouble. He frankly admitted, however, that, after examin-

ing the patient at the hospital in April, it was his opinion that he had a concussion. The disorientation and confused condition of the patient's mind and the constant headaches complained of while the patient was in the hospital were indicative of concussion. The doctor stated that there might be a bloodclot on the brain that would not show up on an x-ray. He did not know whether a trauma that Jefferson may have had would have aggravated his syphilitic lesion or not.

Dr. Royal K. Stacey, of Whitfield, testified that according to the hospital records when Jefferson was examined at Whitfield there was no evidence of a traumatic injury; and so far as he knew Jefferson's condition at the time he entered the hospital and his ultimate death were due to general paralysis, or syphilis of the central nervous system. Upon being questioned about the effect of a traumatic injury in a case of that kind, Dr. Stacey stated that he did not believe that a minor injury would enter into the case at all; but, if a person had a severe head injury and there was a sufficient amount of concussion to cause a hematoma of some kind, such injury might contribute to his death. Dr. William L. Jaquith, the director of the State Hospital at Whitfield, testified that, in his opinion, if the syphilis had not already entered the central nervous system, a traumatic injury, even though it might produce a concussion, would not transfer the germ from the blood stream to the central nervous system.

It was the contention of the appellants on the hearings before the attorney-referee and the commission, and it is their contention on this appeal, that the evidence adduced on behalf of the claimants was insufficient to show that the deceased was injured as a result of a fall, or that there was any causal connection between the alleged injury and the subsequent disability and death of the deceased. The appellants also argue that the commission erred in amending the findings of the attorney-referee to the effect that a preponderance of the medi-

cal testimony was in favor of the defendants and in making a finding of their own to the effect that there was no preponderance of medical testimony in favor of the defendants.

But the evidence is undisputed that the deceased fell while he was working on the job. And we think there was sufficient evidence to support the finding of the attorney-referee and the commission that the deceased was injured as a result of that fall and that the injury lighted up and accelerated a preexisting dormant syphilitic condition and was a contributing cause of the disability and death of the deceased. We also think that the commission was justified in its finding that the medical testimony did not preponderate in favor of the appellants.

Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement of the Workmen's Compensation Law, if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. Larson, Workmen's Compensation Law, Section 12.20, p. 170; Ingalls Shipbuilding Corporation v. Byrd, 215 Miss. 234, 60 So. 2d 645; Cowart v. Pearl River Tung Co., et al., 218 Miss. 472, 67 So. 2d 356; Federated Mutual Implement & Hardware Ins. Co. v. Spencer (Miss.), 67 So. 2d 878; Tate v. Dr. Pepper Bottling Co., et al., (Miss.), 70 So. 2d 602.

There was no error in the judgment of the circuit court affirming the order of the commission allowing death benefits to the widow and defendant minor children of the deceased, and that judgment will be affirmed.

The appellants complain, however, that the judgment of the circuit court affirming the order of the commission did not impose a limitation of 66 2/3 per cent of the average weekly wage of the deceased as a maximum limitation upon the total amount of the death benefits to be paid to all of the claimants. But the stat-

ute, Section 6998-13, Code of 1942, provides that "the total amount payable shall in no case exceed sixty-six and two-thirds per centum (66⅔%) of such wages, subject to the maximum limitations and to weekly benefits as set up in this act." The judgment of the lower court must therefore be construed so as to give effect to the statutory limitation.

It also appears from the record that the circuit court allowed to the attorneys of record for the appellees an attorney's fee in the amount of 45 per cent of the total recovery, to be paid in a lump sum, as compensation for their services in handling the case before the commission and on appeal. The record shows that the attorneys for the appellees have rendered excellent services on behalf of their clients in a case which required unusual effort. But this Court has held that the fee for all services of claimants' attorneys in cases of this kind should not exceed one-third of the sum recovered. Sunnyland Contracting Co., Inc., et al. v. Davis et al. (Miss.), 75 So. 2d 638. That part of the judgment of the circuit court allowing the above mentioned attorney's fee will therefore be modified here, so as to show the allowance of an attorney's fee of 33 1/3 per cent of the total of the sums recovered, in lieu of the fee of 45 per cent mentioned above, and the amount thus allowed shall be computed and paid in a lump sum as provided in the opinion rendered in Sunnyland Contracting Co., Inc. v. Davis, supra.

The judgment of the lower court affirming the order of the Workmen's Compensation Commission allowing death benefits to the appellees is affirmed. That part of the judgment relating to the allowance of an attorney's fee is modified and affirmed, and the cause is remanded.

Affirmed and remanded.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.