PRENTISS TRUCK AND TRACTOR Co., et al. *v.* SPENCER, et al.

No. 40118 May 7, 1956 87 So. 2d 272

68

*Ely B. Mitchell,* Corinth, for appellants.

70

*Orma R. Smith,* Corinth, for appellees.

74

KYLE, J.

This case is before us on appeal by Prentiss Truck and Tractor Company and its insurance carrier from a judgment of the Circuit Court of Prentiss County affirming an order of the Workmen's Compensation Commission awarding death benefits to the surviving widow and minor child of Joseph L. Spencer, deceased, whose death resulted from a rifle shot wound inflicted by himself on April 12, 1953.

The record shows that the decedent was injured on March 6, 1951, while engaged in the performance of his duties as an employee of Prentiss Truck and Tractor Company at Booneville, Mississippi. The decedent had been employed by the Prentiss Truck and Tractor Company as a shop mechanic for a period of approximately seven months prior to the date of his injury. His weekly earnings at the time of his injury amounted to $55 per week.

On March 6, 1951, the decedent was engaged in overhauling a tractor in his employer's shop, and when he attempted to crank it the tractor backfired, jerking or throwing him to the floor, as a result of which he sustained an injury to his back. The employer and its insurance carrier recognized the injury as a compensable injury and paid the employee compensation from March 6, 1951, to September 12, 1951, at which time the compensation payments were discontinued. The employee thereafter filed an application with the commission to obtain a reinstatement of the compensation payments. A hearing was had before the attorney-referee, and an order was entered on December 3, 1951, directing the reinstatement of the compensation payments and their continuance in accordance with the provisions of the Workmen's Compensation Act. That order was affirmed by the commission, and the order of the commission was later affirmed by the circuit court and by this Court on appeal. See Federated Mutual and Hardware Insurance Company v. Spencer, 219 Miss. 68, 67 So. 2d 278. But while

the case was pending in this Court on appeal the employee on April 12, 1953, shot himself in the roof of his mouth with a 22 caliber rifle and died immediately as a result of the rifle wound.

After the death of the decedent claims were filed by his widow, Mattie Spencer, and his two minor children, Shirley Ann Spencer and James Robert Spencer, for death benefits under Section 6998-13c, Code of 1942, and amendments thereto. Shirley Ann Spencer was under 18 years of age at the time of her father's death, but James Robert Spencer, though under the age of 18 at the time of his father's injury on March 6, 1951, was over the age of 18 at the time of his father's death. The matter was heard before the attorney-referee, and at the conclusion of the hearing, the attorney-referee announced his findings of fact and entered an order awarding death benefits to the surviving widow and the two dependent children. From that order the employer and its insurance carrier appealed to the full commission. The full commission affirmed the award except as to James Robert Spencer, and the case was then appealed by the employer and its insurance carrier to the circuit court. The circuit court after reviewing the record entered a judgment affirming the order of the commission.

The record in this case shows that after Spencer had sustained his injury on March 6, 1951, he was examined by Dr. R. B. Warriner and was placed in the Community Hospital at Corinth for further examination and treatment. Dr. Warriner testified that the X-ray examination showed a definite arthritic condition, which pre-dated the decedent's injury on March 6; that the X-ray revealed no fracture of the lumbar vertebrae, but the decedent complained of a numb feeling in the first fingers of both hands. In answer to a question as to the patient's mental condition at that time, the doctor stated that there seemed to be present a definite factor upon which he could not place his finger. ''Some people might

call it a nervousness; others might call it a psychopathic factor.''

Spencer was discharged from the hospital about three weeks later and soon thereafter went to see Dr. R. C. Wiggins, who placed him in the Cornith Hospital for observation and treatment. Doctor Warrington and Dr. Wiggins both recommended that the patient go to Campbell's Clinic in Memphis for further examination, and in June Spencer went to Campbell's Clinic and was examined by Dr. Speed, who called in Dr. E. C. Schultz, a neuro surgeon. The examination of the spine was painful, and Dr. Schultz advised the patient that he would have to be hospitalized for several days in order that he might make a more thorough examination. Spencer, however, returned to his home in Corinth and went to see Dr. F. M. Davis. Finally, in October, Spencer returned to Memphis and was again examined by Dr. Schultz, who in the course of his examination located a mass in the cervical area at the C-5 level. The doctor recommended that an operation be performed for the removal of the obstruction, which, in his opinion, was causing the disability complained of in the patient's hands and arms. Dr. Schultz operated on the patient on February 1, 1952, and found a ruptured disc at the C-5 level, which was calcified. Dr. Schultz was of the opinion that this disc was ruptured prior to the date of the injury complained of, and not as a result of that injury. However, on cross-examination, the doctor stated that the injury in all probability lighted up and accelerated the dormant condition of the ruptured disc. The operation performed by Dr. Schultz on February 1 alleviated the pressure on the nerves at the C-5 level. There was no improvement in Spencer's physical condition, however, during the next several months, and in May he went to Mitchell's clinic at Excelsior Springs, Missouri, for treatment. In November he re-entered the Community Hospital at Corinth and was treated by Dr.

M. H. McRae. About the first of February 1953 he went to Nashville and stayed in the home of his son, who lived in Nashville. He was still apparently a very sick man. His son's family physician was called in. He was later turned over to another doctor and was placed in a hospital in Nashville. He remained in the hospital about ten days and then returned to the home of his son, where on April 12, 1953, he took his own life by shooting himself with the 22 caliber rifle.

Twelve witnesses, including four doctors, testified for the claimants during the hearing before the attorney-referee, and the deposition of Dr. Schultz, which was taken on behalf of the employer and its insurance carrier, was also read in evidence.

The attorney-referee found that the decedent prior to his injury on March 6, 1951, was jovial, good natured, and care free, a good workman, and apparently a healthy man; that after his injury he suffered continually, day and night, slept little, was extremely nervous, morose, moody and melancholy; that he did queer things; that he had hallucinations; that he despaired of ever being able to work again and support himself and his family; and that he was unable to cope with or solve the problems presented by his suffering and his injuries; that all of the doctors classified him as a mental case; and that Dr. Schultz, when he examined the decedent in April 1952, found him to be mentally sick and recommended psychiatric treatment; that two other doctors found him to be mentally unstable, and testified that he was suffering with a mental disturbance of depressive insanity and in their opinion did not know what he was doing when he killed himself and did not know or understand the consequences of his act.

The attorney-referee stated that the medical proof adduced on behalf of the claimants supported their claim that the death of the decedent was causally related to the injury sustained by him on March 6, 1951, while

he was engaged in the performance of services for his employer.

The first point argued by the appellants' attorney as ground for reversal on this appeal is that the claimants' evidence was insufficient to show that the deceased sustained an injury on March 6, 1951, as a result of the motor on which he was working backfiring.

It is argued that while the decedent's testimony in the prior case was competent to establish his own claim for disability compensation, the transcript of his testimony taken during the former hearing was improperly admitted as evidence in this case; that self serving statements made by an injured workman as to the cause of his death are not, after his death, admissible in evidence to establish the claims of his dependents against the employer for death benefits under the Workmen's Compensation Act; and that without the decedent's testimony the claimants' evidence in this case was insufficient to support the attorney-referee's finding that the decedent sustained an injury while working on the tractor.

But we think there was no error in the action of the attorney-referee and the commission in admitting in evidence as a part of the claimants' proof the transcript of the decedent's testimony taken during the former hearing. Section 6998-28 (a), Code of 1942, provides as follows: "In making an investigation or inquiry or conducting a hearing, the commission shall not be bound by common law or statutory rules of evidence or by technical or formal rules or procedure, except as provided by this act, but may make such investigation or inquiry or conduct such hearing in such manner as best to ascertain the rights of the parties. Declarations of a deceased employee concerning the injury in respect of which the investigation or inquiry is being made or the hearing conducted shall be received in evidence and shall, if corroborated by other evidence, be sufficient to

establish the injury.'' While it is true that the claimants in this case are not the same as in the former proceeding and the rights sought to be enforced are not the same, the facts which were being inquired into and concerning which the decedent testified during the former hearing were the same. The appellants had ample opportunity to cross-examine the decedent when he testified as a witness in his own behalf on the prior hearing, and his sworn testimony concerning his injury of March 6, 1951, was competent and was properly admitted as a part of the claimants' evidence in this case.

It is next argued on behalf of the appellants that the burden of proof was upon the claimants in this case to show by a preponderance of the evidence that the decedent took his own life through an uncontrollable impulse or in a delirium of frenzy and without conscious volition to cause death.

Section 6998-04, Code of 1942, expressly provides that, ''No compensation shall be payable if the intoxication of the employee was the proximate cause of the injury or if it was the wilful intention of the employee to injure or kill himself or another.''

As stated by Judge Borah in Voris v. Texas Employers Insurance Association, 190 F. 2d 929, the crucial and controlling question presented by this appeal is whether there is legal and factual support for the conclusion of the attorney-referee and the commission that the deceased's act was not the result of a wilful intention to kill himself within the meaning of the above statute.

In discussing the right of the dependent widow and children to recover death benefits in cases of this kind, the text writer in 5 Am. Jur., p. 763, Workmen's Compensation, par. 262, says:

"The right to compensation for the death of a workman by suicide may depend upon whether he was sane or insane at the time of the commission of the act, and,

if insane, whether such insanity was proximately caused by a compensable injury. ▮ ▮ The *American* cases generally have adopted the rule that where insanity and suicide follow an injury to a workman which was otherwise compensable, compensation may be awarded if he took his own life through an uncontrollable impulse, or in a delirium of frenzy, and without conscious volition to cause death, since under such circumstances there was a direct and unbroken causal connection between the injury and the suicide and no intervening cause. ▮ ▮ But where suicide on account of the consequences of a compensable injury results from a voluntary wilful choice determined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act, even though the choice is dominated by a disordered mind, there is a new and independent agency which breaks the chain of causation arising from the injury, and no compensation can be had.''

It is the contention of the appellants that the acts of the decedent leading up to the firing of the shot which ended his life on April 12, 1953, were the acts of one of moderate intelligence with mental capacity, to know the purpose and the physical result of the suicidal act even though his choice was dominated by a disordered mind, and that under these facts there was a new and independent agency which broke the chain of causation arising from the injury which he had received.

But this contention, we think, is fully answered in the opinion rendered by Judge Borah in the Voris v. Texas Employers Insurance Association (1951), 190 F. 2d. 929, and which was decided by the Circuit Court of Appeals of the Fifth Circuit in 1951, and the opinion rendered by the Florida Court in Whitehead v. Keene Roofing Co. (1949), 43 So. 2d 464.

The Voris case involved claims for death benefits for the dependents of one Heinrich under the provisions of

the Longshoremen's and Harbor Workers' Compensation Act. Heinrich was engaged in the repair of a vessel which was then in the navigable waters of the United States, when he suffered painful burns of the face and hands and general shock of undetermined degree as a result of an explosion aboard the vessel. Thereafter he developed manic-depressive insanity and about seven months thereafter shot himself and died about three weeks later. The deputy commissioner found "that Henrich's wound was self-inflicted with the intention of killing himself; that the act was carried out in a fit of mental despondence and depression resulting primarily from the effects of the explosion; that the act was the result of an irrational state of mind and uncontrollable impulse; and that it was not an act occasioned by the wilful intention of the employee to injure or kill himself as contemplated by Section 3 (b) of the Act." Pursuant to these findings an award was entered allowing compensation. The employer and carrier then brought an action in the court below to set aside and enjoin the enforcement of the award. The district court found that the award was wholly unsupported by the evidence, and accordingly entered a judgment setting aside and enjoining the enforcement of the award. The Circuit Court of Appeals, after reviewing the evidence in the case, found that the evidence was sufficient to support the deputy commissioner's findings, and in its opinion said:

"There was substantial medical evidence to the effect that a person suffering from depressive insanity is not completely in control of his mental faculties; that there is a lack of ability to judge a situation properly and see things as they really are; that such persons have no restrictions to a certain extent, do not consider their family and friends and do not have any religious consideration; that although the depressed person is perfectly aware that his suicidal act will produce death, the choice to kill himself is not entirely

voluntary; and that such a person, in this abnormal mental condition, would be psychiatric and committable.

"From the foregoing the Deputy Commissioner could reasonably find that the accident and injury caused the manic-depressive insanity; that this abnormal mental condition caused the deceased to take his own life; and that his reasoning faculties were so far impaired that his act of self-destruction was not voluntary and wilful within the meaning of section 3(b) of the Act."

In Whitehead v. Keene Roofing Company (1949), 43 So. 2d 464, the record showed that the decedent fell from a roof on which he was working and sustained serious bodily injuries. He did not improve and a little more than three months after the accident he swallowed a mixture of potash and lye from which he died four days later. His widow, the appellant, filed claim for death benefits under the Workmen's Compensation Act. The deputy commissioner found that the decedent took his life by wilful intent and dismissed the claim. The full commission reversed the order of the deputy commissioner and awarded appellant benefits. On appeal to the circuit court the order of the full commission was reversed. The circuit court was of the opinion that the evidence showed that the decedent was aware of what he was doing at the time he took the poison and what the consequences of his act would be, and that his mental condition at the time was such that his intention to take his life was wilful and no compensation could be allowed under the Florida statute. The Supreme Court on appeal reversed the judgment of the lower court and awarded death benefits to the widow, and in its opinion the Court said:

"We do not think that this ruling is in accordance with the intent and purpose of the Workmen's Compensation Act which, as frequently stated by this

court, is to provide for injured workmen and, in the event of their death from injuries received in their employment, their dependents, so that the burden might not fall on society but on the industry served. * * *

"We believe that in those cases where the injuries suffered by the deceased result in his becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, his suicide cannot be considered 'wilful' within the meaning and intent of the Act.

"There is no force to the argument, propounded by some courts, that the act of suicide is an independent intervening cause of the death of the workman, thus breaking the chain of causation from the injury to the death of the deceased. While it may be an independent intervening cause in some cases, it is certainly not so in those cases where the incontrovertible evidence shows that, without the injury, there would have been no suicide; that the suicide was merely an act intervening between the injury and the death, and part of an unbroken chain of events from the injury to the death, and not a cause intervening between the injury and death. See City of Lakeland v. Burton, 147 Fla. 412, 2 So. 2d 731.

"In the instant case, the evidence showed that the deceased was not only suffering from a mental disturbance at the time he took the poison but that he was, to use his own expression, 'nuts'. Certainly, if his action in taking the poison was the result of an uncontrollable impulse or in a delirium or frenzy, it could not be said that he was capable of forming a wilful intention to take his own life."

In the case that we have here, Dr. F. M. Davis, who had had special experience in psychiatry and the treatment of mental diseases as a member of the staff of the Central State Hospital, at Nashville, Tennessee, and

who treated Spencer after his first visit to Memphis for an examination at Campbell's Clinic, testified that in his opinion Spencer's action in taking his own life was the result of a manic-depressive type of mental disturbance, and at the time Spencer took his own life he did not have sufficient mentality to know what the consequences of his act would be. Dr. Davis also stated that in his opinion Spencer's mental disturbance was attributable to and stemmed from the injury that he had received.

Doctor Schultz testified that, when he examined Spencer the last time on April 16, 1952, Spencer manifested a great deal of emotional instability, and in his report the doctor recommended that the patient be examined by a psychiatrist. On his cross-examination the doctor testified that he was convinced that the fall of March 6, 1951, did not produce the ruptured disc; that the disc at the C-5 level had been ruptured prior to that date. But the doctor also stated that, where there is a ruptured disc a jolt or jar may start the pain, although the disc may have been injured a long time before and the patient may have suffered no pain therefrom. If the patient had not had this fall or jolt, he might never have had any trouble with the ruptured disc.

██ ██ This Court has held that preexisting disease or infirmity of an employee does not disqualify a claim under the "arising out of employment" requirement of the statute, if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. East v. Pigford Bros. Const. Co., 219 Miss. 121, 68 So. 2d 294; Tate v. Dr. Pepper Bottling Co., 220 Miss. 311, 70 So. 2d 602; Federated Mutual Implement and Hardware Insurance Co. v. Spencer, 219 Miss. 68, 67 So. 2d 878; Mississippi Cooperatives v. Jefferson, 224 Miss. 150, 79 So. 2d 723; Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356.

 We think there is factual support in the record in this case for the conclusion reached by the attorney-referee and the commission that the deceased employee took his life at a time when he was suffering from a mental disturbance of depressive insanity and did not have the mental capacity to determine the consequences of his act; that his mental condition was brought about by the injury received by him while working for his employer, and that his reasoning faculties were so far impaired that his act of self-destruction was not voluntary and wilful within the meaning of Section 6998-04, Code of 1942; and that there was a direct causal connection between the injury sustained by the deceased employee on March 6, 1951, and his suicide two years later.

 It is next argued on behalf of the appellants that the claimants, under the statute, were required to prove their dependency upon the deceased at the time of his death, as a condition to the right to recover death benefits, and that the proof failed to show that Mrs. Spencer was dependent upon her husband for support. But we think there is no merit in this contention. Subsection (c) of Section 6998-13 of Code of 1942 provides that death benefits shall be payable to the *surviving widow* or *dependent husband*. Subsection (g) provides that, "A surviving wife, child or children shall be presumed to be wholly dependent." The term "widow" is defined in paragraph 14 of Code Section 6998-02, so as to include "the decedent's legal wife, living with him, or dependent for support upon him at the time of his death." The record in this case shows that Mrs. Spencer was living with her husband at the time of his death. Under the statute she was presumed to have been wholly dependent, and it was not necessary that she prove dependency in order to maintain her claim for death benefits.

 It is next argued that the attorney-referee erred in allowing compensation upon the basis of an

average weekly wage of $55. But there is no merit in this contention. The record shows that $55 per week was the going rate of pay for shop mechanics in the area in which the decedent was employed, and it was the average wage of the decedent at the time of his injury.

 It is next argued that the attorney-referee and the commission erred in failing to reduce the total amount of death benefit payments to be made to the claimants by the amounts paid to the deceased employee during his lifetime as compensation benefits. But we think there was no error in the action of the attorney-referee or the commission in refusing to reduce the total amount of death benefits to be paid to the claimants under the statute by the amount paid to the deceased employee during his lifetime as compensation benefits. Larson says, ''The amount due by statute as death benefits is not diminished by payments made to the injured employee himself while he was alive, unless there is express statutory provision for a different rule.'' Larson's Workmen's Compensation Law, Vol. 2, p. 125, par. 64.10.

In Section 6998-13, Code of 1942, the Legislature has provided a complete scheme for the payment of death benefits to the wife and other dependents of the deceased employee; and no where in that section or in any other section of the act has the Legislature provided that the death benefit payments to be made to the surviving wife and other dependents shall be reduced by the amount paid to the deceased employee during his lifetime as compensation benefits. If the Legislature had intended that such reduction be made, it would have so provided in the act.

We find no reversible error in the record and the judgment of the circuit court is affirmed.

Affirmed and remanded.

*McGehee, C.J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.

## MOTION OF APPELLEES AND THEIR ATTORNEY FOR APPROVAL AND ALLOWANCE OF ATTORNEY'S FEES.

An opinion was rendered and a judgment entered in this case on March 26, 1956, affirming an award of death benefits made by the Workmen's Compensation Commission to the widow and minor child of Joseph L. Spencer, deceased.

Since the decision was rendered a motion has been filed by the appellees and their attorney asking for the approval and allowance of an attorney's fee to be paid to the appellees' attorney in a sum equal to 33-1/3 per cent of all death benefits accrued prior to the entry of an order of allowance of said attorney's fee by this Court, plus a sum of money equal to a partial lump sum settlement of 33-1/3 per cent of the present value of all future death benefits, to be computed and paid as hereinafter provided.

 ██ The motion for the approval and allowance of said attorney's fee is sustained. And the attorney for the appellees is hereby allowed, as full compensation for all services rendered by him in this cause, a sum of money equal to 33-1/3 per cent of all death benefits which have accrued prior to the entry of an order ·in this cause, plus a sum of money equal to a partial lump sum settlement of 33-1/3 per cent of the present value of all future death benefits, said partial lump sum settlement to be determined and computed as provided in Section 6998-19 (j), Mississippi Code of 1942, and to be deducted from payments last to become due the claimants.

Motion sustained and attorney's fee fixed at 33-1/3 per cent.

*McGehee, C.J.,* and *all, Arrington* and *Gillespie, JJ.,* concur.