562 So.2d 1298 (1990)
INTERNATIONAL PAPER Company
v.
Lynda Kelley.
No. 07-CC-59502.
Supreme Court of Mississippi.
May 30, 1990.
Karl R. Steinberger, Bryant Colingo Williams & Clark, Pascagoula, for appellant.
Stephen G. Peresich, Page Mannino & Peresich, Biloxi, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Lynda Kelley filed a claim for workers' compensation benefits against International Paper Company for injuries sustained on May 17, 1978. The Administrative Law Judge found that Kelley sustained a compensable, work-related injury and awarded medical benefits, temporary total disability benefits, permanent partial disability based on 25% permanent partial disability to the body as a whole, and assessed penalties against International Paper Company (IP). The employer, a self insurer, appealed to the full Commission and Kelley cross-appealed asserting that she suffered a greater than 25% loss of wage earning capacity.
The Commission approved the finding of the Administrative Law Judge that Kelley had sustained a work related, compensable injury, and that she was entitled to medical benefits, temporary total disability benefits, and penalties. The Commission reversed the finding that she suffered a loss of wage earning capacity attributable to *1299 the compensable injury. Both parties appealed to the Circuit Court of Jackson County, Mississippi, and that court affirmed the decision of the full Commission. International Paper Company has appealed from the judgment of the lower court and presents the following issues for review by this Court:
(1) Whether or not substantial evidence exists to support a finding that Lynda Kelley's back problems after June 1978 were causally related to her May 17, 1978, accident.
(2) Whether the facts warrant assessment of statutory penalties on unpaid benefits and whether the law allows assessment of penalties on medical expenses.
Lynda Kelley has cross-appealed from the decision of the lower court and presents the following issues for review by this Court:
(1) Whether the Mississippi Worker's Compensation Commission erred in failing to award Lynda Kelley permanent partial disability benefits.
(2) Whether the Commission should have assigned a higher loss of wage earning capacity than that found by the Administrative Judge.

FACTS
In May 1978, Lynda Kelley was employed by International Paper Company in Gautier, Mississippi, as a trimmer operator. The machine was used to cut paper to customer specification and Kelley earned an average weekly wage of $232.40. On May 17, 1978, the # 6 trimmer, which Kelley operated, was not in use and Kelley's foreman told her to take all the garbage drums outside and empty them. While so engaged, she stepped backward off a loading dock and hit her back on a wooden skid lying on the ground approximately six feet below. She spent the remainder of her shift in the first aid office where heat was applied to her back. The following day, Kelley was in a great deal of pain and she was taken to the emergency room of the Providence Hospital in Mobile, Alabama, where she then lived. The radiological report from the hospital indicated that there was a mild compression fracture involving the superior end plate of the body at L3.
It is uncontradicted that Kelley injured her back while in the course of her employment. The extent of her injury is the question which must be answered. On May 23, 1978, Kelley was examined by Dr. McGinley, an orthopedic surgeon at the Mobile Bone and Joint Center. He diagnosed her condition as lumbosacral sprain and contusion, gave her medicine for pain and recommended heat and rest. On May 26, 1978, when Kelley reported to IP that she had blood in her urine, she was sent to the company's physician, Dr. Perry Hockaday. He released her to return to work on June 5, 1987. She received compensation benefits for the period May 18, 1978, to June 5, 1978.
On November 17, 1978, Kelley returned to the Mobile Bone and Joint Center because of continued severe pain in her lower back and left leg. She was treated by Dr. Andin C. McLeod who advised her not to work for five weeks. Dr. McLeod saw Kelley four times over a period of six weeks. He was of the opinion that the back pain she was experiencing was not causally related to the May 17, 1978, accident. However, he could not say with 100% certainty that her fall did not aggravate an on-going condition.
On February 9, 1979, Kelley, a union representative, and the mill manager had a meeting with reference to Kelley's condition. At that meeting, Kelley indicated that in November 1978, she had been having trouble with a "pulled disc" which Dr. McLeod had said was due to a previous mill injury, not to the May 17th injury. Kelley filed a claim with her health insurance and received disability payment benefits of $206.00 for every week that she did not work because of her condition.
In 1979, Kelley worked almost the whole year without any serious complaints. In 1980, she missed 106 days of work due primarily to non-work-related illness and surgery. Dr. Winstead performed a surgical procedure for treatment of an inguinal hernia and he referred Kelley to Dr. Robinson *1300 for additional surgery, e.g., a laparotomy, a hysterectomy, an appendectomy and a resection of the ovaries. Dr. Robinson released her to return to work in December 1980.
Kelley worked most of 1981. In November 1981, she consulted Dr. James B. Martin and requested him to refer her to Dr. Drake for treatment of hip and low back pain. She did not work from November 22, 1981, until January 10, 1982, and, during that time, she received disability benefits from her personal insurance. In 1982, Dr. Drake performed a diskectomy at L5-Sl. The surgery gave her some relief but after she returned to work, other employees helped her with her work, according to Kelley.
In July 1983, Kelley returned to Dr. Drake, complaining of back pain she had not previously experienced. He performed a fusion of L2 and L3 and she was unable to work from July 13 to April 1, 1984. As with all treatment subsequent to 1979, Kelley filed for and received benefits from her personal disability insurance, indicating that the treatment was not for a work related condition. Kelley testified that she had been able to work fully since Dr. Drake performed the operation; that she was able to do her job but that it hurt her to do the work; that she was fully able to function; that she was carrying her load; that she did what they needed her to do at the plant. The Administrative Law Judge made the following findings of fact:
1. That on or about May 17, 1978, the claimant suffered a compensable injury to her lower back while in the course and scope of her employment when she fell backwards off of a six foot loading dock and landed on her back;
2. That the claimant, was temporarily and totally disabled from May 18, 1978 through June 5, 1978 from November 17, 1978 through November 27, 1978, from December 21, 1978 through January 27, 1979, from November 25, 1981 through January 9, 1982, from June 1, 1982 through October 16, 1982, and from July 8, 1983 through December 31, 1984;
3. As a result of the compensable injury to her back with leg pain, the claimant sustained a loss of wage-earning capacity of twenty-five (25%) percent;
4. The claimant's average weekly wage was $232.40;
5. The employer and carrier are not entitled to apportionment; and
6. The claimant is entitled to penalties.
The Commission entered an order affirming the Administrative Law Judge's finding as to compensability, the assessment of penalties, the award of temporary total disability benefits and medical benefits but reversed as to the finding of a 25% loss of wage earning capacity attributable to the compensable injury. The Commission ordered:
IT IS THEREFORE ORDERED AND ADJUDGED that the employer, International Paper Company, a Self-Insurer, shall pay compensation benefits as follows:
1. Temporary total disability benefits in the amount of $91.00 per week from May 18, 1978 through June 5, 1978; from November 17, 1978 through November 27, 1978; from December 21, 1978 through January 27, 1979; from November 25, 1981 through January 9, 1982; from June 1, 1982 through October 16, 1982; and from July 8, 1983 through December 31, 1984, with proper credit for wages earned by claimant or compensation paid by defendant during the period; and
2. All reasonable and necessary medical services and supplies as the nature of claimant's injury or the process of her recovery may require as provided in Miss. Code Ann., Section 71-3-15 (1972).
IT IS FURTHER ORDERED AND ADJUDGED that there shall be added to each item of compensation untimely paid and to each item of medical expense incurred the equivalent of ten percent (10%) thereof as provided in Miss. Code Ann., Section 71-3-37(5) (1972).

*1301 LAW
I.
International Paper Company (IP) contends that there was not substantial evidence to support a finding that Lynda Kelley's back problems, after June 1978, were causally related to the May 17, 1978 accident.
It is conceded by the parties that Kelley fell and injured herself on May 17, 1978. Subsequently, over a period of years, she had back problems and other physical ailments, most of which were not related to her May 17 accident.
Dr. David Skagerberg, an orthopedic surgeon in Bay St. Louis, Mississippi, testified for the claimant as an expert witness. A digest of that testimony follows:
Relying upon a medical history from the claimant following the May 17, 1978 injury, a physical examination of her, and a review of the medical records and x-rays from the Providence Hospital, the Mobile Bone & Joint Center (Dr. McGinley and Dr. McLeod) and those of Dr. John Drake, Dr. Skagerberg concluded that the claimant had suffered a permanent impairment causally related to the May 17, 1978 fall. Dr. Skagerberg concluded that the fall of May 17, 1978, caused a herniation of the L5-S1 disc and in addition, aggravated the instability of the L2-3 disc. The herniation at L5-S1 led to back pain and left leg pain. The L2-3 instability progressed with increasing x-ray changes and progressive back pain, eventually necessitating surgical stabilization (spinal fusion) of L2 to L3. His opinion was that the May 17th fall caused the herniation of the L5-S1 disc which led to a chain of pathological events where the herniation eventually caused back and left leg pain. Further, it was his opinion that the fall of May 17th aggravated a pre-existing instability of the L2-3 disc and that the aggravated instability led to an increase in the degeneration of the L2-3 disc and finally resulted in a recurrent exacerbation of back pain with some right leg pain. He placed the date of her maximum medical improvement as being around October of 1984 and was of the opinion that the claimant had suffered a twenty-five (25%) percent permanent impairment to the body as a whole from the back injury.
Dr. Skagerberg stated that she would be able to return only to light work with occasional stooping and bending. He stated that she had a limited and diminished ability to stoop, bend, and twist and that she would develop progressive back pain on prolonged standing and that she would tend to have flare-ups of low back and possibly leg pain if she were to combine heavy lifting with stooping and twisting. With regard to future medical treatment, he did not foresee future hospitalizations or major surgical procedures. However, he did see the need for analgesics and pain killers and that she will probably have to resort to rest, heat treatments and therapeutic exercises from time to time because of back pains either at the end of the day or because of flare-ups of back pain. He did think she would probably have to see a physician in the future for examination and recommendations regarding treatment in the events of flare-ups.
The principle is well established in this state that, if a decision of the Mississippi Workers' Compensation Commission is based on substantial evidence, the circuit court and this Court are bound by the finding of fact made by the Commission. Davis v. Scotch Plywood Co. of Mississippi, 505 So.2d 1192 (Miss. 1987); Sperry-Vickers, Inc. v. Honea, 394 So.2d 1380 (Miss. 1981); Segar v. Garan, Inc., 388 So.2d 164 (Miss. 1980); Gray v. Poloron Products of Mississippi, 347 So.2d 363 (Miss. 1977); Miss. Federated Cooperatives v. Jefferson, 224 Miss. 150, 79 So.2d 723 (1955).
After reviewing the testimony of all physicians and the lay testimony, we are of the opinion that the finding of the Mississippi Workers' Compensation Commission is supported by substantial evidence.
The lower court is affirmed on this issue.

*1302 II.
International Paper contends that Mississippi Workers' Compensation Commission and the lower court erred in assessing statutory penalties on medical expenses.
Miss. Code Ann., § 71-3-37 (1972), which deals with penalties, provides:
(5) If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subsection (2) of this section, there shall be added to such unpaid installment an amount equal to ten percent (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subsection (4) of this section, or unless such nonpayment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.
(6) If any installment payable under the terms of an award is not paid within fourteen (14) days after it becomes due, there shall be added to such unpaid installment an amount equal to twenty percent (20%) thereof, which shall be paid at the same time as, but in addition to, such compensation unless review of the compensation order making such award is had.
Miss. Code Ann. § 71-3-37(5), (6) (1972).
In J.H. Moon & Sons v. Hood, 244 Miss. 564, 144 So.2d 782, (1962), this Court, in interpreting the above section, then Miss. Code Ann., § 6998-19 (1942), said:
The statute provides for a penalty on "any installment, payable under the terms of an award." This has reference to weekly installments of compensation benefits, according to its own terms, and not to medical expenses. The word "installment" mean [sic] "a portion of a debt or sum of money which is divided into portions that are made payable at different times." Webster's International Dictionary (2d Ed.) P. 1287. Medical expenses do not fall within this definition. Moreover, provisions for penalties are strictly construed. Doubtful questions as to them are resolved in favor of the one against whom the penalty is sought.
J.H. Moon & Sons v. Hood, 244 Miss. 564, 572, 144 So.2d 782, 784 (1962).
The statute defines compensation as "the money allowance payable to an injured worker or his dependents as provided in the chapter, and includes funeral benefits provided therein." We are of the opinion that the Mississippi Workers' Compensation Commission and lower court erred in assessing penalties against unpaid medical expenses.
The judgments of the lower court and the Mississippi Workers' Compensation Commission are reversed and rendered on this issue.

CROSS APPEAL
Kelley contends that the Mississippi Workers' Compensation Commission and the lower court erred in failing to award her permanent partial disability benefits on the basis of the 25% impairment to the body as a whole, as assessed by Dr. Drake and Dr. Skagerberg. She further contends that they erred in declining to award her permanent partial disability benefits in excess of the 25% loss.
The Mississippi Workers' Compensation Commission recognized in its order that Kelley had suffered a 25% permanent impairment to the body as a whole but stated that permanent partial disability benefits are not awarded for physical injury but rather "a loss of earning power in whole or in part." The Mississippi Workers' Compensation Commission made the following finding of fact:
The Supreme Court has also interpreted the definition of disability to mean "[a loss of] earning power in whole or in part. This is the only test." Rivers Construction Co. v. Dubose, [241 Miss. 527] 130 So.2d 865, 870 (1961).
The record indicates that after the injury claimant returned to same employment and assumed the same tasks prior to the injury. Since that time the claimant *1303 has earned the same or an amount greater than that earned prior to the injury.
A rebuttable presumption of no loss of wage-earning capacity exists when post-injury earnings are the same as or exceed that which was earned previous to the injury. Agee v. Bay Springs Forest Products, 419 So.2d 188 (Miss. 1982), see also V. Dunn, Mississippi Workers' Compensation Section 67 (3d ed. Supp. 1986).
The evidence shows that claimant experienced an overall increase of post-injury wages since her injury and has offered no proof to rebut the presumption by showing that the post-injury earnings are not reliable in determining wage-earning capacity. Id. at 189.
The Full Commission is of the opinion claimant did not establish a loss of wage-earning capacity attributable to the compensable injury and thus is not entitled to the award of permanent disability benefits. In so holding the Full Commission notes that Miss. Code Ann. Section 71-3-73 (1972) provides either party the right to reopen a claim in the event of a material change in the claimant's condition or a mistake in a determination of fact.
In Agee v. Bay Springs Forest Products, Inc., 419 So.2d 188 (Miss. 1982), the medical evidence established claimant as having a 5% to 10% disability to the body as a whole. The Mississippi Workers' Compensation Commission denied permanent partial disability benefits and on appeal from the lower court, this Court said:
Ordinarily, it should require no argument to persuade any fact-finding body that Mr. Agee, who had undergone surgery, and whose back manifestly is not, and never will be, as strong as it was prior to injury, has suffered at least some loss in wage-earning capacity in his only means of livelihood: low-skilled manual, or semi-manual, labor.
We have a well settled rule of law, however, that in determining wage-earning capacity in the situation where an injured employee returns to work and receives the same or greater earnings as those prior to his injury, there is created a rebuttable presumption that he has suffered no loss in his wage-earning capacity. [citations omitted]
An attorney faced with this fact in preparing his case has every opportunity to rebut the presumption by showing a number of surrounding facts and circumstances that the worker's post-injury wages alone are not necessarily decisive. Absent such showing the presumption stands. The record reveals no evidence offered to rebut the presumption created by the employer-carrier.
In this posture neither the commission nor the circuit court judge had any alternative but to deny permanent partial disability benefits.
Id. at 189. See also Piper Industries, Inc. v. Herod, 560 So.2d 732 (Miss. 1990).
On direct appeal, we affirmed the Commission's finding of a 25% permanent partial disability. We are also of the opinion that the finding of the Mississippi Workers' Compensation Commission that Kelley did not establish a loss of wage earning capacity attributable to the compensable injury and is not entitled to the award of permanent disability benefits is supported by substantial evidence.
The judgment of the lower court is affirmed on this cross appeal.
AFFIRMED IN PART AND REVERSED AND RENDERED IN PART ON DIRECT APPEAL. AFFIRMED ON CROSS APPEAL. REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION.
HAWKINS, P.J., and DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.