KING, Justice,
dissenting:
¶ 24. The claim in today’s case is essentially medical negligence based on the failure to address harmful effects of a drug, even after medical providers were informed of these negative effects occurring in the decedent. The trial court and the Majority find that the plaintiffs claim is not actionable, as a matter of law, because the claim is not based on intentional conduct and the decedent was not under the direct supervision of the defendants. I find that the claim is actionable and that there are questions of fact for the jury in today’s case. Therefore, I dissent.
¶ 25. This Court’s seminal case addressing wrongful death claims stemming from suicide is State for Use and Benefit of Richardson v. Edgeworth, 214 So.2d 579 (Miss.1968). The plaintiff in Edgeworth filed suit against justices of the peace and deputy sheriffs, claiming that the decedent’s suicide resulted from the defendants’ abuse of the legal process. Id. at 581. After several efforts to collect bad checks, the defendants went to the dece *699 dent’s home at 1:30 a.m. with two arrest warrants. Id. at 583. Upon hearing of the two warrants, the decedent’s wife, who was pregnant, fainted. Id. In an effort to not go to jail, the decedent asked to borrow money from neighbors, but he was unable to get the funds. Id. at 584. The decedent then returned to his home, went into his bedroom, and shot himself. Id.
¶26. This Court held in Edgeworth that “where the suicide is committed in response to an uncontrollable impulse, recovery may be had if the mental state of deceased was substantially caused by the defendants’ intentional wrongful acts, and whether they were substantial factors in bringing about the death by suicide may be issues for the jury.” Id. at 587. Importantly, Edgeworth did not expressly foreclose negligence claims such as the one presented in today’s case. Rather, it specifically addresses irresistible or uncontrollable impulses stemming from a defendant’s intentional conduct. Further, Edgeworth compared the issues presented in that case to Tractor Company v. Spencer, 228 Miss. 66, 87 So.2d 272 (1956), which allowed workers’ compensation death benefits for a suicide which apparently stemmed from an on-the-job compensable injury, not an intentional tort. Id.
¶ 27. As the Majority notes, federal courts have interpreted Edgeworth’s irresistible impulse exception as the only available claim in Mississippi for wrongful death stemming from suicide. See Sham-burger v. Grand Casino of Miss., Inc./Biloxi, 84 F.Supp.2d 794, 798 (S.D.Miss. 1998). A review of this Court’s caselaw, however, supports the contention that the claims in today’s case are actionable. For example, in Young v. Guild, 7 So.3d 251 (2009), this Court addressed the jury instructions given in a medical negligence case against a psychiatrist arising from the decedent’s suicide. One instruction given stated:
the burden of proof is on the plaintiff to prove that the psychiatrist was guilty of negligence which caused the injury. In this case, the plaintiff must prove by a preponderance of the evidence that [the defendant] was negligent in his treatment of [the decedent] and that such negligence, if any, caused her suicide.
Id. at 259. This Court held that the instructions given — including the above-quoted instruction — “fairly and adequately instructed the jury on the applicable primary rules of law. The jury instructions correctly defined the elements of medical negligence, including the standard of care applicable to [the defendant] in this case and treatment of [the decedent].” Like today’s case, the decedent in Young had been discharged from inpatient care a number of days prior to her suicide. Id. at 255. Thus, the Majority’s implication that Mississippi caselaw does not support a cause of action when the decedent has been released from the defendant’s custody is amiss. (Maj. Op. at ¶ 20). Further, the Majority improperly relies on the withdrawn Young opinion. (Maj. Op. at ¶ 14). The opinion relied on by the Majority was withdrawn and substituted by the opinion discussed above.
¶ 28. Further, other cases in Mississippi have allowed wrongful death claims arising from suicide. See Carrington v. Methodist Med. Ctr., Inc., 740 So.2d 827 (Miss.1999). Other jurisdictions permit claims similar to Truddle’s. See Edwards v. Tardif, 240 Conn. 610, 692 A.2d 1266, 1272 (1997) (claim maintained against internist who prescribed large dosage of anti-depressants to decedent without psychiatric evaluation or suicide assessment); Stafford v. Neurological Med., Inc., 811 F.2d 470, 473 (8th Cir.1987) (claim maintained against physician and medical service after *700 form incorrectly stated that decedent, who committed suicide, had a brain tumor). See also Oreutt v. Spokane County, 58 Wash.2d 846, 364 P.2d 1102 (1961) (applying irresistible impulse rule to negligent acts resulting in suicide).
¶ 29. In today’s case, Eric Carmichael was prescribed Reglan.[2] Dr. Noberto Alvarez, a medical expert, testified that Re-glan can affect mental activity and may be associated with suicidal thinking.
¶30. Shortly after taking a dose of Reglan, Carmichael began acting strange. His girlfriend, who was visiting him at the hospital, testified that Carmichael began acting unusual and that she feared he might become violent. Carmichael then ripped his IV lines out of his arm and left his hospital room. He then yelled at and hit the nursing staff who attempted to stop the bleeding from his IV lines. Carmichael also reported to the nursing staff that someone had tried to rape him. Notes of this incident were placed Carmichael’s file, although his treating physician admittedly did not read them. When the physician, Dr. Malhotra, informed Truddle and Carmichael that Carmichael could be discharged, Truddle requested that Carmichael not be discharged because of the events that had occurred the previous night. According to Truddle, Carmichael also asked to stay at the hospital. Despite these requests, Dr. Malhotra discharged Carmichael, instructing him to return if he did not feel better.
¶ 31. Carmichael continued to act strangely after his hospital discharge. At one point, he told Truddle that he no longer wanted to take Reglan because it was “making him crazy.” After a few days, Truddle accompanied Carmichael to a followup visit with Dr. Malhotra. Carmichael reported to Dr. Malhotra that the medicine he had been prescribed was “making him crazy.” Despite this complaint, Dr. Malhotra wrote another Reglan prescription for Carmichael. Carmichael committed suicide two days after the followup appointment with Dr. Malhotra.
¶32. Under the facts of today’s case, Truddle’s claim is actionable. The defendants had notice that Carmichael was experiencing serious side effects from his prescribed medications. Despite requests to no longer take the medication, Dr. Ma-lotra continued to prescribe Reglan. Not addressing the reported, and harmful, effects of the medication is an actionable negligence claim. As such, I disagree with the Majority’s finding that summary judgment was proper in today’s case. Therefore, I dissent.
DICKINSON, P.J., KITCHENS AND COLEMAN, JJ., JOIN THIS OPINION.

. Reglan is a gastrointestinal medication which may cause the following side effects: "depressed mood, thoughts of suicide or hurting yourself; hallucinations, anxiety, agitation, jittery feeling, trouble staying still." Re-glan, http://www.drugs.conVreglan.html (last visited November 4, 2014).