347 So.2d 363 (1977)
Lewis GRAY, Jr.
v.
POLORON PRODUCTS OF MISSISSIPPI et al.
No. 49364.
Supreme Court of Mississippi.
May 25, 1977.
Rehearing Denied July 13, 1977.
William E. Trusty, William L. Cook, Jr., M. Collins Bailey, Batesville, for appellant.
Shell, Buford, Bufkin, Callicutt & Perry, K. Hayes Callicutt, Jackson, for appellees.
Before GILLESPIE, ROBERTSON and LEE, JJ.
LEE, Justice, for the Court:
Lewis Gray, Jr., claimed workmen's compensation benefits for injuries sustained September 4, 1969. The attorney/referee allowed temporary total benefits from September 6, 1969, to October 5, 1969, and denied permanent partial benefits, which decision was affirmed by the full commission and by the Circuit Court of Panola County. Gray appeals from that judgment and we reverse.
While in the scope of his employment with Poloron Products of Mississippi, appellant's automobile struck a bridge abutment and he was thrown violently into the steering wheel. Appellant was taken to the South Panola Hospital where Dr. H. Deck Stone, the company physician, examined and attended him. He remained in the hospital from September 4, 1969 to September 6, 1969, and was discharged to go home. On October 7, 1969, he was released by the doctor and he returned to work. Appellees concede that appellant sustained injuries to his chest, but contend that he had recovered from same on October 3, 1969, without any residual effects, and that he did not sustain injuries to his spine. Appellant claims that, in addition to his chest injuries, he sustained serious disabling injuries to his back. The Workmen's Compensation Commission accepted appellees' version.
The testimony of lay witnesses, including claimant, shows for the claimant that he complained of pain in his chest, neck and back, and was unable to work, although he did work for approximately seven (7) months because he had to support his family. The lay testimony for appellees indicated that after returning to work, appellant never complained of back trouble or of being unable to do his work, that he worked longer and harder than he had before the injury, and that he worked for a period of seven (7) months without any complaint to his employer.
The question presented on this appeal is whether or not there is substantial evidence *364 to support the finding of the full commission. For a determination of this question, it is necessary to analyze the medical testimony.
Dr. H. Deck Stone was the first doctor to examine and treat the claimant. He found that claimant had contusions of the chest and a possible separation of the bones and the cartilage in the area of the sternum. He testified that claimant made no complaint of any pain in the spine, cervical or lumbar, and that he did not examine his neck and back or X-ray them. He did say that on October 3, 1969, when he saw claimant, complaint of pain in the back was made.
Dr. Ben Moore next examined appellant on January 5, 1970. He said that claimant complained of chest pains, particularly in the sternum area, but of no other pain and no complaint was made about the neck or back injuries. He did not examine appellant's cervical, lumbar or thoracic spine or X-ray them.
Dr. H. Nelson Hamilton, an orthopedic surgeon from Greenville, examined appellant on May 13, 1970, and hospitalized and treated him until May 30, 1970. He made X-rays of appellant's spine and testified that there was a fracture at C-6, a compression fracture at C-6, a fracture at L-5, traumatic cervical nerve root neuropathy, a mass at C-6, and that the X-rays showed real evidence of fractures at C-1, L-4 and L-5.
It is significant that Dr. Hamilton said the first time he saw appellant that complaint was made of tenderness in his lower back, his fingers on the left hand were dead, the straight-leg raising test was painful with back and neck pain, and there was a deadening in the lower left leg. An examination of the neck also showed a unilateral pedicle fracture at C-6 and a compression fracture at C-6. Appellant showed signs of traumatic cervical nerve root neuropathy and signs of post-traumatic arthropathy following fracture in the cervical area. These findings resulted from the physical and clinical examination performed by Dr. Hamilton and from an inspection of the X-rays. He treated appellant from May 13, 1970, to September 13, 1971, (date he last saw him) and during this time examined Gray some sixteen (16) times. In his opinion, on March 22, 1971, appellant was totally disabled and had not reached maximum improvement by the time of the hearing on November 18, 1971.
Dr. William Franklin Owens, Jr., an orthopedic surgeon from Jackson, testified for appellees that he examined the X-rays taken by Dr. Hamilton, that he saw no fractures of the cervical spine and that he did not believe appellant had muscle spasms. He noted an abnormality from X-rays of L-4 and L-5 which indicated a spondylolysis condition, and which, in his opinion, was old and chronic. Dr. Owens never saw or examined Gray, and he said that the spondylolysis condition could well have been aggravated by the injuries. He further stated that Dr. Hamilton was better qualified to testify as to appellant's condition than he, and that it is not uncommon for patients to complain of the injury hurting worse and then notice and complain of other pain later on.
Dr. James M. Packer, a radiologist from Jackson, testified for appellees that he saw no fractures in the X-rays, that there was evidence of a spondylolysis condition which was old and remote. He said that he was not an authority on such a condition and that radiologists differ in their interpretation of it.
Dr. Lloyd Merbitz, an orthopedic surgeon from Greenville, testified for the appellant that he examined the X-rays of Dr. Hamilton, that there was no fracture to the left cervical spine, that the six cervical vertebrae indicated a little suspicion to him, but he could not diagnose from the X-rays, that there might be a defect in L-4 and L-5. In his opinion, if it were a fracture, there would be resulting damage to the soft tissues of the neck and back.
Dr. Henry B. Grochau, a radiologist from Greenville, testified for appellant that he was requested by Dr. Hamilton to perform a laminagraphic examination of appellant's *365 spine and that he also took coned down views of the cervical spine. The X-rays taken by Dr. Hamilton were too incomplete for him to make a final diagnosis, but they were strongly suggestive of a fracture of the pars interarticularis. Dr. Grochau testified that there was a strong suspicion of a fracture of C-6 and that the fracture was fresh. His X-rays indicated that there was a linear separated bone fragment and loss of definition of the joint between L-4 and L-5 and that this strongly suggested to him a fracture of the interior facet. In his opinion, the fractures were the result of direct trauma, the conditions were not present to suggest a congenital defect and, in his opinion, there was a great percentage of probability that there was a fracture of appellant's back and neck.
Dr. Hamilton was recalled by appellant, and he testified that the Exhibit 1 X-ray indicated a spondylolysis effect which he felt was due to a fracture because it was not smooth and it did not have the characteristics of a congenital defect. He stated that the fractures themselves are not of any great importance so far as diagnosis and treatment of appellant is concerned, but they confirm that trauma had been received and that the fracture was healing. He stated further that appellant had an unstable lumbosacral injury following the accident, that the damage received was soft tissue damage to the muscles, damage to the joints in the cervical area and damage to the nerve roots.
The Workmen's Compensation Act is given a broad and liberal construction. Doubtful cases should be resolved in favor of compensation in order to serve the humane purposes of the act. Youngblood v. Ralph M. Parsons Co., 260 So.2d 188 (Miss. 1972); Central Electric Power Association v. Hicks, 236 Miss. 378, 110 So.2d 351 (1959). In reviewing a case, the Court is required to look at all the evidence on both sides. Roberts v. Junior Food Mart, 308 So.2d 232 (Miss. 1975).
In Harpole Bros. Construction Co. v. Parker, 253 So.2d 820 (Miss. 1971), claimant was a healthy, physical laborer until a limb fell on his back, he resumed work in a few days, but continued to have problems with his back (this was in 1965). In 1968, a physician thoroughly examined Parker's back and found traumatic arthritis which was consistent with a history of injury to the back. Dr. Thompson testified for the employer that he found no acute injury and it was his opinion that claimant was suffering from spondylolisthesis, a congenital defect, and that, in his opinion, any disability was not connected with the injury. The commission denied compensation, the circuit court reversed and was affirmed by this Court in the following language:
"It is clear that the only possible basis upon which the commission could deny compensation in this case is the testimony of Dr. Thompson. If his testimony is considered in isolation, it might amount to substantial evidence to support the finding of the commission, but when it is considered with the other evidence in this case, it loses much of its character and does not amount to substantial evidence. In reviewing a record to determine whether there is substantial evidence to support the order of the commission, we must look at all the evidence on both sides. When we do that in this case, we find that the order of the commission is clearly erroneous." 253 So.2d at 822-823.
In Riverside of Marks v. Russell, 324 So.2d 759 (Miss. 1976), the claimant suffered a cerebrovascular accident while loading baggage. His physician testified that it resulted from a hemorrhage, which is usually work related, and the employer's physician testified that it resulted from thrombosis, which is usually not work related. The attorney/referee and full commission denied compensation, the circuit court reversed and entered judgment for the claimant, and this Court, in affirming the lower court, held that there was ample evidence to show that claimant's injury was caused by his work.
The only doctors who physically examined appellant here were Dr. Stone, Dr. *366 Moore and Dr. Hamilton. Dr. Stone and Dr. Moore admittedly did not perform a physical examination on the cervical and lumbar spine while Dr. Hamilton did perform such an examination, including the taking of X-rays, and he cared for and treated claimant from May 13, 1970, until November 18, 1971, which was the last date he saw claimant prior to the hearing. From the physical and other examinations of claimant, Dr. Hamilton positively testified that appellant had sustained injuries to his spine which were causally related to the accident of September 4, 1969. Dr. Merbitz examined the X-rays taken by Dr. Hamilton and corroborated Dr. Hamilton in some degree. Dr. Grochau conducted laminagraphic examinations of appellant's spine and it was his opinion there was probability of a fracture. Dr. Grochau's X-rays were not examined by other physicians and his testimony from these X-rays is not contradicted.
We are of the opinion that the order of the Workmen's Compensation Commission is not founded on substantial evidence, and that the great weight of evidence in the case shows appellant sustained an injury to his spine as a result of the September 4, 1969 accident. The evidence indicates that a spondylolysis condition may have been present in appellant's spine. Preexisting injury was pleaded as an affirmative defense by the appellees. Dr. Hamilton testified that claimant was totally disabled as of March 22, 1971, and that he had not reached maximum improvement on November 18, 1971. The judgment of the lower court, therefore, is reversed, judgment is entered here in favor of appellant, and the cause is remanded to the commission for the purpose of determining questions of total disability, permanent partial disability, if any, and apportionment, if any.
REVERSED AND REMANDED TO WORKMEN'S COMPENSATION COMMISSION.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.